PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-4305
_____

UNITED STATES OF AMERICA

v.

TERRITORY OF THE VIRGIN ISLANDS

*RONALD EDWARD GILLETTE by his Next
Friend Joseph A. DiRuzzo, III, Esq.,

Appellant

*(Pursuant to Rule 12(a) Fed. R. App. P.)

*(Amended in light of the Court Order dated 1/29/13)
____

On Appeal from the District Court
of the Virgin Islands
(D. VI. No. 1-86-cv-00265)

District Judge:  Honorable Wilma A. Lewis

_____

Argued December 9, 2013

Before:  FISHER, COWEN and NYGAARD, *Circuit Judges*.

(Filed: April 11, 2014)

Joseph A. DiRuzzo, III, Esq.   *ARGUED*

Jeffrey J. Molinaro, Esq.
Fuerst Ittleman David & Joseph
1001 Brickell Bay Drive
32nd Floor
Miami, FL 33131


Jennifer L. Eichhorn, Esq.    *ARGUED*

Mark L. Gross, Esq.
United States Department of Justice
Civil Rights Division, Appellate Section
P.O. Box 14403
Ben Franklin Station
Washington, DC 20044


Angela P. Tyson-Floyd, Esq.
Office of United States Attorney
1108 King Street
Suite 201
Christiansted
St. Croix, VI 00820

Paul J. Paquin, Esq.    *ARGUED*

Carol L. Thomas-Jacobs, Esq.
Office of Attorney General of Virgin Islands
Department of Justice
34-38 Kronprindsens Gade
GERS Complex, 2nd Floor
St. Thomas, VI 00802

———

OPINION OF THE COURT

———

FISHER, *Circuit Judge*.

Appellant Ronald E. Gillette seeks to intervene in this twenty-eight year old litigation between the United States and the Territory of the Virgin Islands (collectively, "Appellees"). At issue are the conditions in the Golden Grove Adult Correctional Facility ("Golden Grove"), which is located on St. Croix.  Both the United States and Gillette, who is incarcerated at Golden Grove, seek to improve conditions at the facility that allegedly fall below the minimum standards required by the United States Constitution.  Because we conclude that the United States adequately represents Gillette's interests in this case and that Appellees will be prejudiced if intervention is permitted, we will affirm the District Court's order denying his motion to intervene.

3

## I.

## A.

This litigation began in 1986 when the United States sued the Virgin Islands pursuant to the Civil Rights of Institutionalized Persons Act ("CRIPA"), 42 U.S.C. § 1997, seeking to enjoin the Virgin Islands from allegedly depriving inmates at Golden Grove of their Eighth Amendment rights.[1] That same year, Appellees entered into a Consent Decree, which provided that the Virgin Islands would attempt to remedy the conditions at Golden Grove. The Consent Decree recognized the need to protect inmates from "'unreasonable fire safety risks to their lives and safety' and 'wanton and reckless physical violence by other inmates or staff,' as well as providing 'minimally adequate sanitation to protect inmates from unreasonable risks to their physical health' and 'minimally adequate medical care for the serious medical needs of inmates.'" App. at 63 (quoting the Consent Decree at 3-4).

Following entry of the Consent Decree, Appellees continued to litigate over the conditions at Golden Grove. The District Court entered several additional orders when the conditions at Golden Grove failed to improve according to plan, including a 1990 Plan of Compliance, a 2003 Stipulated Agreement, a 2007 Remedial Order, and three additional

---

[1] Documents related to this case filed prior to February 1996, including the complaint, are not available electronically. The historical facts of this case are largely undisputed and are therefore taken from the District Court's opinions dated February 8, 2012 (App. at 61-91) and November 7, 2012 (App. at 7-16), along with the parties' briefs.

4

orders in December 2009, February 2010, and December 2010. The ongoing litigation relates in large part to the Virgin Islands' compliance with the Consent Decree and these subsequent orders.

In July 2011, the Virgin Islands filed a motion to terminate prospective relief pursuant to the Prison Litigation Reform Act ("PLRA"), 18 U.S.C. § 3626(b), (e). Upon the filing of the motion to terminate, the automatic stay provisions of the PLRA operated to stay the District Court's orders pending a hearing on the motion and its resolution. In approximately September 2011, the parties began discovery regarding conditions at Golden Grove in preparation for further litigation, while at the same time engaging in settlement negotiations. By opinion dated February 8, 2012, the District Court concluded that all but one of the orders entered after the 1986 Consent Decree constituted prospective relief under the PLRA, and that those orders did not include the findings required under the statute. The District Court ordered an evidentiary hearing to determine whether "prospective relief remains necessary to correct a current and ongoing violation of a federal right at Golden Grove under § 3626(b)(3) of the PLRA, and, if so, to ensure that the prospective relief is narrowly tailored to that violation in the manner required by the PLRA." App. at 62.

B.

Gillette is a prisoner at Golden Grove who is no stranger to this Court. He was convicted on April 11, 2008 of several territorial crimes and sentenced to 300 months' imprisonment on June 19, 2009. Gillette filed a timely appeal

5

of his sentence with this Court on June 22, 2009.[2] He also filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 in the District Court on January 31, 2012. In his habeas petition Gillette cited extensively to statements made by the United States in its pleadings in the present litigation. Those statements list the alleged unconstitutional conditions at Golden Grove. *See* Supp. App. at 3-7. The District Court found that it lacked jurisdiction to consider Gillette's habeas petition and dismissed it *sua sponte*, concluding that the petition should have been brought as a civil rights claim pursuant to 42 U.S.C. § 1983. The denial of Gillette's habeas petition is currently pending before this Court. *See Gillette v. Territory of the Virgin Islands*, No. 13-2530, -- F. App'x -- (3d Cir. Apr. 11, 2014).

Gillette filed a motion to intervene in the present case on July 21, 2012, one day after the United States filed a motion to dismiss his habeas petition. Gillette's motion sought leave to intervene as of right pursuant to Federal Rule of Civil Procedure 24(a), or, in the alternative, for permissive intervention pursuant to Rule 24(b). Gillette argued that: (1) as an inmate at Golden Grove, he had a cognizable interest in the subject of the litigation; (2) his interests would be impaired if he were not permitted to intervene; (3) the United

---

[2] Gillette sought to voluntarily withdraw the direct appeal of his criminal conviction despite counsel's objection, and this Court remanded to the District Court for a determination of Gillette's competency to withdraw his appeal. Following a hearing, the District Court concluded that Gillette was not competent to do so, and the direct appeal was argued on April 24, 2013. We rendered a decision affirming his conviction on December 6, 2013. *United States v. Gillette*, 738 F.3d 63 (3d Cir. 2013).

6

States will not adequately represent his interests in the litigation; and (4) his motion to intervene was timely. Gillette's memorandum in support of the motion extensively quoted the representations about the conditions at Golden Grove made by the United States in this case. Both Appellees responded to Gillette's motion.

The District Court denied Gillette's motion to intervene by order dated November 7, 2012.[3] The accompanying memorandum opinion concluded that the motion to intervene as of right failed for two independent reasons. First, the motion was untimely because of: (a) the advanced stage of the proceedings; (b) the prejudice to the parties caused by permitting intervention on the eve of settlement (the District Court was informed that the parties had reached a settlement only twelve days after Gillette's motion was fully briefed); and (c) the lack of a good reason for Gillette's delay in seeking to intervene. Second, Gillette failed to establish that the United States would not adequately represent his interests, particularly in light of his extensive reliance on the United States' pleadings in outlining his grievances about Golden Grove. The District Court denied Gillette's motion for permissive intervention for "the same reasons" that it denied the motion to intervene as of right. App. at 16.

By the time the District Court denied Gillette's motion, Appellees had already submitted a proposed Settlement Agreement to the District Court on August 31, 2012. The Settlement Agreement identifies ways to remedy the deficient conditions at Golden Grove in the areas of: (1) medical and mental health care; (2) inmate safety and supervision

---

[3] Gillette timely filed a notice of appeal of the District Court's order on November 14, 2012.

(including classification of inmates for housing and use of force policies); (3) fire and life safety; (4) environmental health conditions (including housekeeping, sanitation, and physical plant conditions); and (5) training of Golden Grove staff. Most relevant to the present case, the Settlement Agreement included detailed provisions related to medical and mental health care, "including screening, assessment, treatment, and monitoring of prisoners' medical and mental health needs." App. at 232-34. The District Court ordered further briefing with respect to a dispute over the selection of an appropriate monitor, but on May 14, 2013, it entered an order adopting the United States' proposed findings of fact and conclusions of law in support of the Settlement Agreement, granted the Appellees' joint motion to enter consent judgment, and accepted the Settlement Agreement.

## II.

The District Court had jurisdiction pursuant to 48 U.S.C. § 1612 and 42 U.S.C. § 1997a. We have jurisdiction pursuant to 28 U.S.C. § 1291. We review the denial of a motion to intervene pursuant to Rule 24 for abuse of discretion. *Harris v. Pernsley*, 820 F.2d 592, 597 (3d Cir. 1987). "We note, however, that our review of district court's [sic] decisions denying intervention of right is more stringent than the abuse of discretion review accorded to denials of motions for permissive intervention." *Id.* A district court's denial of a motion pursuant to Rule 24(a) may be reversed "if the [district] court 'has applied an improper legal standard or reached a decision that we are confident is incorrect.'" *Id.* (quoting *United States v. Hooker Chems. & Plastics Corp.*, 749 F.2d 968, 992 (2d Cir. 1984)). We are, however, "more reluctant to intrude into the highly discretionary decision of whether to grant permissive intervention." *Brody ex rel. Sugzdinis v. Spang*, 957 F.2d 1108, 1115 (3d Cir. 1992).

III.

Rule 24 provides for intervention as a matter of right and permissive intervention. Because Gillette's motion sought each in the alternative, we will discuss them both in turn.

A.

1.

Intervention as of right must be granted when a party "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). A potential intervenor must satisfy four criteria to succeed on a motion pursuant to Rule 24(a)(2): "(1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation." *Harris*, 820 F.2d at 596 (citing *Commw. of Pa. v. Rizzo*, 530 F.2d 501, 504 (3d Cir. 1976)). "Although these requirements are intertwined, each must be met to intervene as of right." *Id.* (citing *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 463 (5th Cir. 1984)). Intervention as a matter of right presents a situation where "[t]he facts assume overwhelming importance in [the] decision." *Kleissler v. United States Forest Serv.*, 157 F.3d 964, 972 (3d Cir. 1998).

Under the facts of this case, the District Court found that Gillette satisfied the sufficiency of interest and impairment of interest elements. Gillette challenges the District Court's determination to the extent it found that he

failed to meet the timeliness and adequacy of representation elements. We need only address the latter element to affirm the District Court's conclusion in this case. *See Harris*, 820 F.2d at 596 (requiring that each element be met before intervention is proper).

2.

The adequacy of representation element requires the applicant to demonstrate "'that his interests are not adequately represented by the existing parties.'" *Brody*, 957 F.2d at 1123 (quoting *Hoots v. Pennsylvania*, 672 F.2d 1133, 1135 (3d Cir. 1982)). Inadequate representation can be based on any of three possible grounds: "(1) that although the applicant's interests are similar to those of a party, they diverge sufficiently that the existing party cannot devote proper attention to the applicant's interests; (2) that there is collusion between the representative party and the opposing party; or (3) that the representative party is not diligently prosecuting the suit."[4] *Id.* A presumption of adequacy attaches, however, "if one party is a government entity charged by law with representing the interests of the applicant for intervention." *Id.* (citing *Del. Valley Citizens' Council for*

---

[4] Although the District Court concluded that Gillette failed to establish any of the three grounds for adequacy of interest, Gillette's challenge on appeal appears to only relate to the first ground; i.e. that his interests diverge from those of the United States. *See* Appellant's Br. at 23-26. Because Gillette makes at most only a passing reference to the other two factors in his opening brief, those arguments are waived. *Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 389 (3d Cir. 1994). In any event, there does not appear to be any evidence of collusion or lack of diligence in this case.

*Clean Air v. Pennsylvania*, 674 F.2d 970, 973 (3d Cir. 1982)). In such an instance, a potential intervenor can only overcome the presumption and thereby intervene by making a "'compelling showing . . . to demonstrate why [the government's] representation is not adequate.'" *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 369 (3d Cir. 1995) (quoting 7C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1909 (1986)). Gillette failed to make such a showing here.

The United States argues correctly that the presumption of adequate representation applies to this case, since CRIPA gives the Attorney General the authority to enforce its provisions:

> Whenever the Attorney General has reasonable cause to believe that any State[5] or . . . official, employee, or agent thereof . . . is subjecting persons residing in or confined to an institution . . . to egregious or flagrant conditions which deprive such persons of any *rights, privileges, or immunities secured or protected by the Constitution or laws of the United States* causing such persons to suffer grievous harm . . . the Attorney General, for or in the name of the United States, may institute a civil action in any appropriate United States district court against such party . . . .

42 U.S.C. § 1997a(a) (emphasis added). The United States relied on CRIPA when it filed suit in 1986 to combat the

---

[5] "State" is defined for purposes of § 1997 as including territories of the United States. *See* 42 U.S.C. § 1997(4).

allegedly unconstitutional conditions at Golden Grove. Because that statute authorizes the Attorney General to pursue civil rights actions on behalf of prisoners who are suffering deprivations of their constitutional rights, we presume that the United States adequately represents the interests of those prisoners. *Brody*, 957 F.2d at 1123. Gillette therefore must make a "compelling showing" as to why his interests are not so represented. *Mountain Top Condo.*, 72 F.3d at 369 (internal quotation marks omitted).

3.

Gillette relies on two decisions in an effort to show that he satisfied his burden in this case: *Kleissler*, and *United States v. Oregon*, 839 F.2d 635, 636 (9th Cir. 1988). *Kleissler* addressed a district court's denial of a motion to intervene filed by "local governmental bodies and business concerns in litigation brought by environmentalists to restrict logging activities in a National Forest." 157 F.3d at 967. The plaintiffs in the underlying suit challenged, on environmental conservation grounds, the use of a logging practice known as "even-aged management." *Id.* at 968 (internal quotation marks omitted). The challenged logging projects, which were approved by the Forest Service, "called for substantial tree harvesting . . . [and] contemplate[d] clearing designated areas of all trees, rather than focusing on individual trees within the given tract, the latter being far more costly and time-consuming for timber companies." *Id.*

The proposed intervenors included local area school districts and municipalities that asserted a financial interest in the suit "because they receive[d] funds from receipts of logging operations in the forest." *Id.* Those funds were used by the municipalities and school districts for public schools and roads. *Id.* Several timber companies also sought to

intervene on the grounds that they: (1) held timber contracts in the forest; (2) were successful bidders on timber contracts; or (3) generated most of their income from timber contracts with the Forest Service. *Id.* The district court denied the motions to intervene by all but two of the timber companies because those two parties' existing timber contract rights would have been threatened if the plaintiffs prevailed. *Id.* The district court also denied the motions to intervene filed by the school districts and municipalities. *Id.*

On appeal, we acknowledged the presumption that the government will adequately represent the concerns of a proposed intervenor. *Id.* at 972. We also noted, however, that "when an agency's views are necessarily colored by its view of the public welfare rather than the more parochial views of a proposed intervenor whose interest is personal to it, the burden [for proving the right to intervention] is comparatively light." *Id.* In light of that lower burden, we concluded that the relief the plaintiffs sought in the underlying suit "would have an immediate, adverse financial effect on the school districts and municipalities," and that all proposed intervenors had a direct economic interest in the litigation. *Id.* at 972 (recognizing that "the polestar for evaluating a claim for intervention is always whether the proposed intervenor's interest is direct or remote").

Ultimately, we noted that the potential intervenors' interests contrasted with those of the government, which represented

> numerous complex and conflicting interests in matters of this nature. The straightforward business interests asserted by intervenors here may become lost in the thicket of sometimes inconsistent governmental policies. . . .

13

> Although it is unlikely that the intervenors' economic interest will change, it is not realistic to assume that the [government's] programs will remain static or unaffected by unanticipated policy shifts.

*Id.* at 973-74 (citations omitted). Intervention was therefore proper based on the conflict between the intervenors' direct economic interests and the government's shifting public policy interests (which included balancing, at least in part, economic gain from timber harvesting with the need to preserve the environment). *Id.* at 974.

In articulating his asserted interests in this case, Gillette's memorandum in support of the motion to intervene demonstrates a substantial overlap between his interests and those of the United States. Specifically, Gillette extensively quotes from the United States' pleadings in this case, indicating that Golden Grove has:

> "failed to: 1) [p]rovide inmates with '*minimally adequate medical care for their serious medical needs*;' 2) [p]rotect prisoners from '*unreasonable fire safety risks to their lives and safety*;' 3) [a]fford the necessary staff supervision and security to protect inmates from '*wanton and reckless physical violence by other inmates or staff*;' and 4) [p]rovide '*minimally adequate sanitation to protect inmates from unreasonable risks to their physical health.*'"

App. at 108-09 (quoting the District Court's February 8, 2012 opinion, which in turn quotes the United States' complaint in

14

this case) (emphasis and alteration in original).  This reliance upon the United States' pleadings belies Gillette's argument that his interests diverge from those of the United States.  In fact, as discussed above, his grievances dovetail with the terms of the Settlement Agreement in this case.  To that end, Gillette's interests not only overlap with those of the United States, they are essentially identical.

Gillette's reliance upon *Kleissler* is misplaced because the proposed intervenors in that case all had a singular, direct financial stake in the underlying litigation that was necessarily in tension with the "thicket of sometimes inconsistent [Forest Service] policies."  157 F.3d at 974.  In that case, the conflict arose from the Forest Service's broad public policy goals, specifically those related to conserving and protecting the environment.  *Id.*  The potential intervenors' financial interests were more limited and thus in tension with those of the government.  Gillette fails to demonstrate a similar conflict here and instead relies almost exclusively upon the United States' allegations in defining the scope of his own.  Even though the United States seeks to secure changes at Golden Grove on a number of levels, its ultimate goal is to achieve constitutionally required conditions at the facility.  Gillette shares that goal, and does not argue that any of the sought improvements would be antithetical to his personal interests—indeed, he listed most of them in his motion.

Gillette argues that negotiations between the Virgin Islands and the United States will necessarily involve some balancing, and likens the problems at Golden Grove and their resolution in the Settlement Agreement to "'a spider web, in which the tension of the various strands is determined by the relationship among all the parts of the web, so that if one pulls on a single strand, the tension of the entire web is

15

redistributed in a new and complex pattern.'" Appellant's Reply Br. at 13 (quoting *Brown v. Plata*, --U.S.--, --, 131 S. Ct. 1910, 1937 (2011)). The metaphor recognizes that there are many issues to be addressed at Golden Grove, with medical and mental health care being only one component. While this point is well-taken, it does not change the underlying fact that Gillette is challenging the constitutionality of the conditions at Golden Grove and that the United States is charged by law with securing the same. *See* 42 U.S.C. § 1997a(a). The fact that the United States may seek broader changes in the Settlement Agreement than those sought by Gillette, however, is more akin to a "difference of opinion concerning the tactics with which the litigation should be handled [and] does not make inadequate the representation of those whose interests are identical with that of an existing party." Wright & Miller, *supra*, at § 1909. This tactical give-and-take identified by Gillette, however, must ultimately survive constitutional scrutiny under the PLRA in this case. *See* 18 U.S.C. § 3626(a)(1)(A) (recognizing that prospective relief under the PLRA is not available unless "the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right"). Unlike in *Kleissler*, therefore, shifting policy considerations are less of a concern when constitutionally guaranteed rights are at stake.

A more analogous case is *United States v. City of Los Angeles*, in which community groups and individual community members appealed the denial of a motion to intervene as of right. 288 F.3d 391, 396-97 (9th Cir. 2002). The underlying litigation involved allegations by the United States that the city and its police department "engaged in a

pattern or practice of depriving individuals of constitutional rights through the use of excessive force, false arrests and improper searches and seizures . . . ." *Id.* at 396. The individual community members seeking to intervene "submitted uncontroverted declarations stating that they [had] suffered from, and [were] likely to continue [suffering] from, the unconstitutional police misconduct *that form*[*ed*] *the basis of the United States' suit against the City*." *Id.* at 397 (emphasis added). In concluding that the district court properly denied the motion to intervene as of right, the court of appeals acknowledged the presumption that the United States would adequately protect the proposed intervenors' interests. *Id.* at 402. Specifically, the court noted that "both the individual and organizational community members are the *exact constituents the United States is seeking to protect in this action*. Thus, this case is not like *Forest Conservation Council*, in which the intervention applicants had 'more narrow, parochial interests' than did the existing government plaintiff." *Id.* (emphasis added) (quoting *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1499 (9th Cir. 1995)).

Like in *City of Los Angeles*, Gillette's argument that his interests diverge from those of the United States is not persuasive because he, as an inmate at Golden Grove, is the "exact constituent" the United States is attempting to protect in this case. *Id.* Like the United States, Gillette simply wishes to "ensure that [the Settlement Agreement] is strictly enforced. Thus, [he shares] the same objective as the United States. Any differences [he may have] are merely differences in strategy, which are not enough to justify intervention." *Id.* The mere fact that he is but one individual while the United States is seeking systemic change at Golden Grove is not

17

relevant under the facts of this case, since their interests are not in conflict—as was the case in *Kleissler*.

Gillette relies upon a second case, *United States v. Oregon*, in which individual residents of a state-run institution sought to intervene in an action brought under CRIPA "claiming failure to provide minimally adequate training, medical care, sanitation and trained staff." 839 F.2d at 636. In addressing whether the proposed intervenors' interests were adequately represented, the court noted that

> the applicants set forth claims for injunctive and other relief affording residents of the facility access to better conditions in the facility, sufficient training in self-care skills and sufficient community-based programs to insure freedom from unnecessary institutionalization. . . . The government has limited its complaint to seeking injunctive relief for the more outrageous conditions existing within the facility.

*Id.* at 637-38. Although the court acknowledged that both the United States and the potential intervenors shared the "goal of vindicating the constitutional rights of [the] residents," the difference in the scope of the relief sought required intervention. *Id.* at 638.

In this case, it is clear that no such difference in scope exists because Gillette expressly relied upon the United States' pleadings, as discussed above. If anything, the scope of changes sought by the United States in this case is broader than Gillette's individual complaints, because his specific grievances are largely limited to the availability of constitutionally adequate medical and mental health care.

The United States, on the other hand, seeks systemic change at Golden Grove that will ensure constitutional conditions for all inmates. In that sense, Gillette is likely to reap even greater benefits as a result of the United States' representation.[6]

In light of the above, we conclude that *Kleissler* and *United States v. Oregon* do not apply where, as here, a government agency has both a constitutional interest in and the statutory authority to seek systemic change that will ultimately provide an individual intervenor with an even greater benefit than that originally sought. In such cases, the "personal" and "parochial views" of the proposed intervenor align with the constitutional interests of the particular government agency, *Kleissler*, 157 F.3d at 972, and intervention as of right pursuant to Rule 24(a) is not appropriate.

## B.

Rule 24(b) provides that a "court may permit anyone to intervene who . . . has a claim or defense that shares with

---

[6] We note also that *United States v. Oregon* is of questionable reliability in light of our Court's precedent. Specifically, the Ninth Circuit applied a *de novo* standard of review and did not apply the presumption in favor of adequate representation. 839 F.2d at 637 (citing *In re Benny*, 791 F.2d 712, 721 (9th Cir. 1986)). As discussed above, we apply a presumption of adequacy when the United States is charged with protecting the applicant's rights. *Brody*, 957 F.2d at 1123. We also apply a more deferential abuse of discretion review to motions to intervene. *Id.* at 1115. In light of these facts, *United States v. Oregon* is easily distinguishable and is not persuasive.

19

the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). "In exercising its discretion, the [district court] must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). As already noted, district courts have broader discretion in making a determination about whether permissive intervention is appropriate as opposed to intervention as of right. *Brody*, 957 F.2d at 1115.

The District Court in this case denied Gillette's Rule 24(b) permissive intervention motion for the same reasons it denied the motion pursuant to Rule 24(a). Specifically, it noted that Gillette's motion "[was] untimely, would delay litigation and prejudice the parties, and his intervention [was] unnecessary given that the United States adequately represents his interests in this matter." App. at 16. In light of our deferential standard of review, we agree with the District Court that Appellees would be prejudiced by allowing Gillette to intervene at this time (and need not delve into the District Court's other reasons).

Courts have recognized that prejudice can result when a party seeks to intervene at a late point in litigation. In *United States v. Tennessee*, the Sixth Circuit affirmed the denial of a motion to intervene as of right where the parties had negotiated a tentative settlement agreement involving complicated issues related to unconstitutional conditions at state facilities, but where the district court had not yet approved the final settlement agreement. 260 F.3d 587, 591-92 (6th Cir. 2001) (addressing whether the existing parties to the litigation would be prejudiced by allowing intervention pursuant to Rule 24(a)). The district court concluded that the intervenor's participation *vis-a-vis* the remedial policies in the settlement agreement could prejudice the parties by leading to collateral litigation. *Id.* at 594. Likewise, in *D'Amato v.*

20

*Deutsche Bank*, the Second Circuit agreed with the district court that, among other reasons for denying a motion to intervene, "late intervention would potentially derail the settlement and prejudice the existing parties, who had been engaging in settlement negotiations for several months." 236 F.3d 78, 84 (2d Cir. 2001) (intervenor sought to challenge the adequacy of a settlement and add defendants to the action by motion filed three days before a scheduled fairness hearing).

Appellees in the present case would be prejudiced if forced to engage in further litigation in response to Gillette's potential objections to the Settlement Agreement, particularly in light of this case's lengthy history. *See Tennessee*, 260 F.3d at 592. That prejudice is further compounded by the fact that Gillette's intervention is unnecessary due to the United States' adequate representation in the ongoing litigation. Intervention at this stage would therefore result in the duplication of effort that is unnecessary and unwarranted. We accordingly conclude that the District Court properly exercised its discretion by denying Gillette's motion for permissive intervention pursuant to Rule 24(b). *See Brody*, 957 F.2d at 1124 ("[I]f intervention as of right is not available, the same reasoning would indicate that it would not be an abuse of discretion to deny permissive intervention as well.").

## IV.

Gillette's interests in this litigation are nearly identical with those of the United States and he fails to make a compelling showing that his interests are not being adequately represented by the United States. We therefore affirm the District Court's denial of Gillette's motion to intervene as of right pursuant to Rule 24(a). We likewise find that the District Court did not abuse its discretion in denying

Gillette's motion pursuant to Rule 24(b) because Appellees would be prejudiced by permitting intervention at this stage in the litigation.[7] We therefore affirm.

---

[7] In light of our conclusions, we affirm the District Court's denial of Gillette's motions. We note, however, that our holding today leaves open the possibility, albeit remote, that the United States' position would change so drastically in relation to Gillette's interests as to justify intervention. In such a circumstance, Gillette would need to clear an even higher hurdle by demonstrating that "extraordinary circumstances" justify revisiting the intervention issue. *Benjamin ex rel. Yock v. Dep't of Public Welfare of Pa.*, 701 F.3d 938, 948-49 (3d Cir. 2012) (applying the law of the case doctrine to a subsequent motion for intervention). We are satisfied that at this time, however, Gillette has not sufficiently demonstrated a divergence of interests that warrants intervention.