PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-1662
_____

RONALD EDWARD GILLETTE,
                                        Appellant

v.

ACTING WARDEN DIANE PROSPER;
JULIUS WILSON, in his capacity as the Director of Prisons;
TERRITORY OF VIRGIN ISLANDS;
ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

On Appeal from the
District Court of the Virgin Islands
(D.C. No. 1-14-cv-00110)
District Judge: Honorable Wilma A. Lewis
_____

Argued December 12, 2016
Before: CHAGARES, JORDAN, and HARDIMAN,
*Circuit Judges*.

(Filed: June 2, 2017)

Joseph A. DiRuzzo, III (Argued)
Jeffrey J. Molinaro
Fuerst Ittleman David & Joseph, PL
1001 Brickell Bay Drive, 32nd Floor
Miami, FL 33131
           *Counsel for Plaintiff-Appellant*

Kimberly L. Salisbury (Argued)
Office of Attorney General of Virgin Islands
Department of Justice
34-38 Kronprindsens Gade
GERS Complex, 2nd Floor
St. Thomas, VI 00802
           *Counsel for Defendants-Appellees*
           _____

OPINION OF THE COURT
_____

HARDIMAN, *Circuit Judge*.

       Appellant Ronald Gillette is an inmate at Golden Grove
Correctional Facility on St. Croix, U.S. Virgin Islands. Gillette
filed suit in the District Court for the Virgin Islands alleging
various constitutional and statutory claims. Most significant to
this appeal, Gillette moved the District Court to convene a three-
judge court under the Prison Litigation Reform Act. The District
Court denied Gillette's motion, finding that he had not satisfied
the prerequisites for convening a three-judge court. Before the
District Court could adjudicate the merits of Gillette's claims, he
filed this appeal. Because the District Court's order denying
Gillette's motion for a three-judge court is neither a final order

nor subject to any exception to the final judgment rule, we will dismiss Gillette's appeal for lack of jurisdiction.

## I

### A

Gillette filed his initial complaint in December 2014 and amended it in March 2015. The amended complaint alleges claims under: (1) 42 U.S.C. § 1983; (2) *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971); (3) Section 504 of the Rehabilitation Act; and (4) the Americans with Disabilities Act (ADA). Gillette claims "he is being subjected to cruel and unusual punishment due to the failure to provide constitutionally mandated medical and mental health treatment, and for being subject to the deplorable conditions of Golden Grove, which also violates the ADA." *Gillette v. Prosper*, 2016 WL 912195, at *1 (D.V.I. Mar. 4, 2016) (quoting Amended Compl. ¶ 3).

The amended complaint asserts that Appellees denied Gillette adequate medical care, failed to protect inmates, provided inadequate training or supervision of prison staff, failed to protect Gillette from suicidal action, and violated the ADA and Rehabilitation Act. Gillette sought from the District Court an order: (1) declaring that the conditions at Golden Grove violate the Eighth Amendment, the Virgin Islands Bill of Rights (48 U.S.C. § 1561), and the ADA; (2) awarding Gillette compensatory damages for the alleged violations of his constitutional and statutory rights; and (3) granting injunctive relief discharging Gillette from detention or, in the alternative, transferring him to another facility that comports with the Eighth Amendment, the Virgin Islands Bill of Rights, and the ADA.

The District Court acknowledged that Gillette's "claims regarding denial of adequate medical care, failure to protect from suicidal action, and violations of the ADA and Rehabilitation Act . . . are particularized in that" they involve allegations specific to Gillette "(*e.g.*, [Gillette] has a brain cyst, a history of suicidal ideation, and 'heat-sensitive disabilities')." *Gillette*, 2016 WL 912195, at *1. Nevertheless, the District Court found that Gillette's remaining claims—"failure to protect from attack" and "inadequate training or supervision"—"are inextricably intertwined with the [ongoing] litigation between the United States and the Virgin Islands regarding the conditions of Golden Grove." *Id.*; *see United States v. Territory of Virgin Islands*, No. 86-265 (D.V.I.) (the Golden Grove Litigation).

In the Golden Grove Litigation, initiated in 1986, the United States sued "the Government of the Virgin Islands pursuant to the Civil Rights of Institutionalized Persons Act ('CRIPA'), 42 U.S.C. § 1997, alleging that the inmates at Golden Grove were being deprived of their constitutional rights under the Eighth Amendment." *Gillette*, 2016 WL 912195, at *1. The parties promptly entered into a consent decree in which the Virgin Islands agreed to try to remedy the conditions at Golden Grove. After the consent decree was entered, the parties continued to litigate the conditions at the prison. "The District Court entered several additional orders when the conditions at Golden Grove failed to improve according to plan, including a 1990 Plan of Compliance, a 2003 Stipulated Agreement, a 2007 Remedial Order, and three additional orders in December 2009, February 2010, and December 2010." *United States v. Territory of Virgin Islands*, 748 F.3d 514, 517 (3d Cir. 2014). In May 2013, the District Court approved a settlement agreement in the Golden Grove Litigation, which called for extensive systemic changes in the areas of "safety and supervision," "medical and

4

mental health care," "fire and life safety," and "environmental health" and safety. *Id.* at 518–19 (describing 2013 Order). In June 2013, the Court also appointed a Monitor, who "lends expertise to the reform effort and provides quarterly reports on Golden Grove's compliance with the [2013 Order]." *Gillette*, 2016 WL 912195, at *1.

Many of Gillette's allegations in this case track closely those raised in the Golden Grove Litigation and the 2013 Order. His claims "are also similar to the claims he raised when he attempted to intervene in the Golden Grove Litigation." *Id.* at *2. In that case, he "argued that he should be permitted to intervene because, as a prisoner of Golden Grove, he has a cognizable interest in . . . the Golden Grove Litigation." *Id.* The District Court denied Gillette's motion, and we affirmed. We explained that Gillette's interests were adequately represented by the United States because, "as an inmate of Golden Grove, [he was] the 'exact constituent' the United States [was] attempting to protect." *Virgin Islands*, 748 F.3d at 523. We also noted the "substantial overlap between [Gillette's] interests and those of the United States." *Id.* at 521.

B

Soon after filing his amended complaint in this case, Gillette filed a motion asking the District Court to convene a three-judge panel pursuant to the Prison Litigation Reform Act (PLRA), 18 U.S.C. § 3626. Therein, Gillette claimed that "his requested relief to be released from Golden Grove or transferred to another facility constitutes a 'prisoner release order' under the PLRA, which can only be issued by a three-judge court." *Gillette*, 2016 WL 912195, at *2. The PLRA defines a "prisoner release order" as "any order, including a temporary restraining

order or preliminary injunctive relief, that has the purpose or effect of reducing or limiting the prison population, or that directs the release from or nonadmission of prisoners to prison." 18 U.S.C. § 3626(g)(4). For purposes of deciding Gillette's motion, the District Court assumed, without deciding, that Gillette's "request for a transfer or release . . . falls within the statutory definition of a 'prisoner release order.'" *Gillette*, 2016 WL 912195, at *3 n.4.

A prisoner release order "shall be entered only by a three-judge court in accordance with [28 U.S.C. § 2284]." 18 U.S.C. § 3626(a)(3)(B). To convene a three-judge court, the party seeking a prisoner release order must file "materials sufficient to demonstrate" that two prerequisites have been satisfied. *Id.* § 3626(a)(3)(C). First, he must show that "a court has previously entered an order for less intrusive relief that has failed to remedy the deprivation of the Federal right sought to be remedied through the prisoner release order." *Id.* § 3626(a)(3)(A)(i). Second, he must demonstrate that "the defendant has had a reasonable amount of time to comply with the previous court orders." *Id.* § 3626(a)(3)(A)(ii).

The District Court found that Gillette had failed to meet these two prerequisites. Regarding Counts 1–5 (denial of adequate medical care), Counts 16–20 (failure to protect from suicidal action), and Counts 21 and 22 (violations of the ADA and Rehabilitation Act), the Court found that Gillette did not satisfy the first prerequisite. Specifically, it found that Gillette failed to show that a prior "order for less intrusive relief . . . has failed to remedy the deprivation." *Gillette*, 2016 WL 912195, at *4. Gillette argued that the previous court orders entered in the Golden Grove Litigation were meant to remedy the same deprivations that he raised in this case. The District Court

disagreed, finding that the 2013 Order in the Golden Grove Litigation encompassed "broad, systemic improvements at Golden Grove" and not Gillette's particularized claims. *Id.*

The District Court also found that Gillette's claims for failure to protect from attack (Counts 6–10) and inadequate training (Counts 11–15) did not meet the second prerequisite for convening a three-judge court. As an initial matter, the Court found that, "unlike [Gillette's] allegations of his particular medical needs and vulnerability to suicide, these [claims] included virtually no facts specific to [Gillette]." *Id.* at *5. Instead, the Court found that these claims concerned "the general policies and conditions of Golden Grove" and thus fell "within the scope of the 2013 Order." *Id.* The District Court also found "that the 2013 Order constitute[d] an order for less intrusive relief that has failed to remedy the deprivation of Federal rights that [Gillette's] prisoner release order seeks to remedy." *Id.* Thus, although these claims satisfied the first requirement for convening a three-judge court, they failed to satisfy the second requirement because "the defendants have not had a reasonable amount of time to comply with the 2013 Order." *Id.* Gillette filed this timely appeal.

## II

The District Court had jurisdiction under 28 U.S.C. § 1331. Appellees challenge our jurisdiction, arguing that the order appealed from is not final under 28 U.S.C. § 1291 and does not fall within any exception to the final judgment rule. Appellees are correct. As we shall explain, the District Court's order neither ends the litigation nor prevents Gillette from taking an appeal after final judgment. Accordingly, we lack jurisdiction.

7

A final decision is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Harris v. Kellogg Brown & Root Servs., Inc.*, 618 F.3d 398, 400 (3d Cir. 2010) (quoting *Catlin v. United States*, 324 U.S. 229, 233 (1945)). The purpose of § 1291 is to "prohibit piecemeal review and dispose of what is, for all practical purposes, a single controversy in one appeal." *Verzilli v. Flexon, Inc.*, 295 F.3d 421, 424 (3d Cir. 2002).

III

A

Gillette argues that the denial of his motion to convene a three-judge court precludes him from securing his release or transfer from Golden Grove, and thus "effectively, and improperly, terminated the litigation below." Gillette Br. 5. This overstates the effect of the denial of the motion. Contrary to Gillette's claim, the District Court neither ruled on the merits nor dismissed any of his claims. Therefore, Gillette's litigation can proceed in the District Court after we dismiss this appeal.

Moreover, should Gillette prevail on the merits, the District Court can order relief to remedy the constitutional violations. While the District Court cannot enter a "prisoner release order" because such an order may be entered only by a three-judge court, 18 U.S.C. § 3626(a)(3)(B), the District Court can fashion other equitable relief short of a release order. *See* 18 U.S.C. § 3626(a)(1)(A) (authorizing relief "necessary to correct" ongoing constitutional violation found by the district court). "Under the PLRA, courts retain their authority to adjudicate constitutional challenges and grant equitable relief to remedy

8

constitutional violations." *Imprisoned Citizens Union v. Ridge*, 169 F.3d 178, 188 (3d Cir. 1999).

In support of our jurisdiction, Gillette relies on several cases where appellate courts reviewed district court orders denying the formation of a three-judge court. Unlike this case, however, the orders appealed from in those cases did effectively end the litigation. *See, e.g.*, *Idlewild Bon Voyage Liquor Corp. v. Epstein*, 370 U.S. 713, 715 n.2 (1962) (noting that appellate court properly rejected jurisdictional challenge where appellant "was effectively out of court" (citation omitted)); *Hartmann v. Scott*, 488 F.2d 1215, 1220 (8th Cir. 1973) (concluding that absence of a final judgment did not preclude review of the three-judge court issue because dismissal of the state defendants terminated the litigation "[f]or all practical purposes"). By contrast, Gillette's claims are still pending before the District Court and the litigation will proceed after we dismiss the appeal. Thus, contrary to Gillette's argument, the order denying a three-judge court does not result in "practical finality." Gillette Br. 8.

The absence of practical finality in Gillette's case is demonstrated by a similar case in which our sister court dismissed a prisoner's appeal from the denial of a three-judge court for lack of jurisdiction. *Jensen v. Dole*, 677 F.2d 678, 679 (8th Cir. 1982). As the Eighth Circuit explained: "The district court made no ruling respecting Jensen's claim for declaratory relief, nor does the order purport to be a dismissal of the entire action. . . . The district court's denial of Jensen's request for a three-judge court is thus not immediately appealable." *Id.* at 680 (citation omitted)). Likewise here, Gillette's claims are still pending before the District Court. Accordingly, the order denying Gillette's motion is not a final judgment under § 1291.

9

B

Gillette's first fallback position is that the collateral order doctrine of *Cohen v. Beneficial Industrial Loan Corp.*, vests us with jurisdiction. In that case, the Supreme Court recognized that there are some issues "too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." 337 U.S. 541, 546 (1949). An interim decision is appealable if it: "(1) conclusively determines the disputed question, (2) resolves an important issue completely separate from the merits of the action, and (3) is effectively unreviewable on appeal from a final judgment." *Sell v. United States*, 539 U.S. 166, 176 (2003) (alterations, internal quotation marks, and citations omitted). "[A] failure to meet any one of the three factors renders the doctrine inapplicable as a basis for appeal, no matter how compelling the other factors may be." *In re Pressman-Gutman Co.*, 459 F.3d 383, 396 (3d Cir. 2006) (citation omitted).

Here, neither the second nor the third factor of the *Cohen* test is met. While the issues raised in Gillette's motion are

important,[1] they are not completely separate from the merits of the underlying action. In fact, the merits of this appeal and the merits of Gillette's underlying case are closely related, as they both concern alleged constitutional violations and seek Gillette's release or transfer from Golden Grove. Moreover, the District Court's order is not "effectively unreviewable on appeal from a

---

[1] Appellees curiously argue that since Gillette will remain incarcerated even after this appeal, this case lacks "that hallmark ingredient that courts usually look for when determining whether a case is 'important.'" Appellees Br. 8. Given the nature of the constitutional violations alleged by Gillette and established by the Golden Grove Litigation, the issues in this case are certainly important. *See, e.g.*, *Sell*, 539 U.S. at 176 (concluding that defendant's right to avoid forced medication is important). Over the past 30 years, Appellees have struggled and, it appears, often failed to maintain a prison that comports with the basic requirements of the Eighth Amendment. *See United States v. Territory of Virgin Islands*, 884 F. Supp. 2d 399, 404–06 (D.V.I. 2012) (providing a detailed account of Golden Grove litigation since 1986, describing Appellees' failure to comply with several court orders and consent decrees, and noting Appellees' "continued inability" to remedy prison conditions). Indeed, according to the most recent compliance report, Appellees have failed to obtain "Substantial Compliance" in 98% of categories in which they are required to make progress. Court-Appointed Independent Monitor's 14th Compliance Assessment Report at 8–9, *United States v. Territory of Virgin Islands*, No. 86-265 (D.V.I. Apr. 30, 2017), ECF No. 1052 (evaluating compliance pursuant to court order (ECF No. 304)).

final judgment." *Sell*, 539 U.S. at 176 (citation omitted). To be unreviewable, "an order must be such that review postponed will, in effect, be review denied." *Martin v. Brown*, 63 F.3d 1252, 1261 (3d Cir. 1995) (citation omitted). Here, any errors in the District Court's analysis of the PLRA's three-judge court provision remain subject to review through the normal appellate process.

C

Gillette also contends that appellate review is appropriate under the *Gillespie* doctrine, which permits appellate review in a limited number of cases after weighing "the inconvenience and costs of piecemeal review on the one hand and the danger of denying justice by delay on the other." *Gillespie v. U.S. Steel Corp.*, 379 U.S. 148, 152–53 (1964) (citation omitted). We have yet to apply this doctrine, but several of our sister courts have considered it. *See, e.g.*, *Mallory v. Eyrich*, 922 F.2d 1273, 1279 (6th Cir. 1991) (finding Rule 60(b) order setting aside judgment in voting rights case immediately appealable under both § 1291 and the *Gillespie* doctrine); *In re Exennium, Inc.*, 715 F.2d 1401, 1403 (9th Cir. 1983) (finding bankruptcy order appealable under *Gillespie* doctrine because ruling would "advance, and not impede, the bankruptcy proceedings"). Nevertheless, the Supreme Court has cautioned against extending *Gillespie*. "If *Gillespie* were extended beyond the unique facts of that case, § 1291 would be stripped of all significance." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 477 n.30 (1978).

In any event, resolution of this appeal is not "fundamental to the further conduct of the case," as is required by *Gillespie*. 379 U.S. at 154. As we noted already, the District Court's order did not decide the merits of the underlying action,

and the case will proceed as it would even if this appeal had not been filed. Gillette insists that "absent the formation of a three-judge court, this case will be litigated before a single judge who does not have power to issue a legally enforceable order or judgment." Gillette Br. 12. Once again, this is an overstatement. Although Gillette is correct that the District Court is powerless to enter a prisoner release order, it retains a panoply of other powers, both legal and equitable, in its adjudication of Gillette's claims.

D

Next, Gillette argues that the District Court's order is immediately appealable because it constituted the refusal of an injunction under 28 U.S.C. § 1292(a)(1). He contends that, "[b]y denying Gillette's request for a prisoner release order, the District Court refused to grant Gillette his requested injunction." Gillette Br. 13. This is factually inaccurate. The District Court did not deny an injunction; it denied a motion to convene a three-judge court. Moreover, the denial of Gillette's motion does not impair the District Court from granting equitable relief in the future.

To the extent that Gillette contends the District Court's order had the practical effect of denying his injunction, this argument also fails. While an order that has the "practical effect of refusing an injunction" can be appealable under § 1292(a)(1), an interlocutory appeal lies only if the District Court's order has "serious, perhaps irreparable, consequence[s], and . . . the order can be effectually challenged only by immediate appeal." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 84 (1981) (internal quotation marks omitted). While the denial of a three-judge court at this stage of the litigation is serious, it is not

irreversible. The District Court's order can be challenged later on appeal from a final judgment.

E

Finally, Gillette argues that, even if appellate jurisdiction is lacking under §§ 1291 and 1292, we should issue a writ of mandamus compelling the District Court to convene a three-judge court because it committed a clear error of law. "Mandamus provides a drastic remedy that a court should grant only in extraordinary circumstances in response to an act amounting to a judicial usurpation of power." *In re Diet Drugs Prods. Liab. Litig.*, 418 F.3d 372, 378 (3d Cir. 2005) (internal quotation marks and citation omitted). It is only appropriate when: (1) the petitioner has "no other adequate means to attain the relief" sought; (2) the "right to the issuance of the writ is clear and indisputable;" and (3) "the issuing court . . . [is] satisfied" in the exercise of its discretion that mandamus "is appropriate under the circumstances." *Id.* at 378–79 (citation omitted).

"The first prerequisite—that the petitioner have no other adequate means to attain the relief sought—emanates from the final judgment rule: mandamus must not be used as a mere substitute for appeal." *Id.* at 379 (internal quotation marks and citation omitted). Because Gillette can appeal the District Court's decision regarding the three-judge court after final judgment, the extraordinary writ of mandamus is not warranted here.

\*　　\*　　\*

The District Court's order is not final under § 1291. Nor is it appealable under the collateral order doctrine, the *Gillespie* doctrine, or as an interlocutory order under § 1292(a)(1). Accordingly, we will dismiss this appeal for lack of jurisdiction.