# United States Court of Appeals

## For the Eighth Circuit

_____

No. 14-1785

_____

North Dakota, ex rel., Wayne Stenehjem, Attorney General for the State of North Dakota,

*Plaintiff - Appellee,*

v.

United States of America,

*Defendant - Appellee,*

Badlands Conservation Alliance; Sierra Club; National Parks Conservation Association,

*Movants - Appellants.*

------------------------------

Billings County, North Dakota; Golden Valley County, North Dakota; McKenzie County, North Dakota; Slope County, North Dakota,

*Plaintiffs - Appellees,*

v.

United States of America,

*Defendant - Appellee,*

Badlands Conservation Alliance; Sierra Club; National Parks Conservation Association,

*Movants - Appellants.*

_____

Appeal from United States District Court
for the District of North Dakota - Bismarck

_____

Submitted: October 6, 2014
Filed: June 1, 2015

_____

Before LOKEN, BEAM, and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Three nonprofit environmental groups moved to intervene in a quiet title action concerning ownership of portions of the Dakota Prairie Grasslands. The district court[1] denied their motion, and the groups appeal. We conclude that the groups were not entitled to intervene as of right, and the district court did not abuse its discretion in denying permissive intervention.

I.

Four North Dakota counties—Billings County, Golden Valley County, McKenzie County, and Slope County—sued the United States in the district court under the Quiet Title Act of 1972, 28 U.S.C. § 2409a. The counties sought to quiet title to alleged rights-of-way along section lines that run throughout lands owned by the United States in North Dakota. The lands are located within the Dakota Prairie Grasslands and are administered and managed by the United States Forest Service. The Counties allege that section lines in North Dakota, with a few exceptions, are

_____

[1]The Honorable Daniel L. Hovland, United States District Judge for the District of North Dakota.

-2-

subject to a public easement that provides a right-of-way for public travel within thirty-three feet on either side of the section lines. The United States does not recognize these rights-of-way. The State of North Dakota filed a separate lawsuit seeking the same relief, and the district court consolidated the actions.

Eight months after the action commenced, three nonprofit environmental organizations—Badlands Conservation Alliance, Sierra Club, and National Parks Conservation Association (collectively, "the Conservation Groups")—moved to intervene as defendants as of right under Rule 24(a) of the Federal Rules of Civil Procedure. Alternatively, they sought permissive intervention under Rule 24(b). The Groups alleged that they possess important aesthetic, recreational, and environmental interests in preserving the Grasslands. The Groups filed declarations by three of their members describing their interests in the Grasslands, their plans to use the Grasslands in the future, and their prior advocacy efforts for the protection of the Grasslands.

All parties opposed the Conservation Groups' motion to intervene as of right, and the State and County plaintiffs opposed permissive intervention. The district court denied the motion to intervene as of right on several grounds: (1) the Groups failed to show injury in-fact and thus lacked Article III standing; (2) the Groups failed to establish a recognized interest in the subject matter of the lawsuit; and (3) the United States adequately represented any legally protectable interest of the Groups in the lawsuit. The court also denied the alternative request for permissive intervention.

The Conservation Groups appeal, arguing that they satisfy all of the requirements for Article III standing and intervention as of right, and alternatively, that the district court abused its discretion in denying their motion for permissive intervention. We review the denial of a motion to intervene as of right *de novo*. *United States v. Union Elec. Co.*, 64 F.3d 1152, 1158 (8th Cir. 1995).

II.

In this circuit, prospective intervenors must satisfy both the requirements of Rule 24(a) and Article III standing to intervene as of right. *Mausolf v. Babbitt*, 85 F.3d 1295, 1300 (8th Cir. 1996). This court has concluded that an Article III case or controversy joined by an intervenor who lacks standing ceases to be an Article III case or controversy. *Id*. But because there is an existing case or controversy between the parties to the underlying action, we may consider first whether a would-be intervenor satisfies Rule 24(a). If intervention was properly denied based on Rule 24, then the case or controversy was not destroyed, and it is unnecessary to determine whether the putative intervenor also satisfies Article III standing requirements. *E.g.*, *Standard Heating & Air Conditioning Co. v. City of Minneapolis*, 137 F.3d 567, 571-73 (8th Cir. 1998).

A party is entitled to intervention under Rule 24(a) when it has made a timely application and "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a). We have paraphrased the rule to say that a putative intervenor must establish that it: "(1) ha[s] a recognized interest in the subject matter of the litigation that (2) might be impaired by the disposition of the case and that (3) will not be adequately protected by the existing parties." *Mausolf*, 85 F.3d at 1299. Even assuming for the sake of argument that the Groups could meet the first two criteria, we conclude that the Groups have failed to show that the United States does not adequately represent their interests in this quiet title litigation.

A putative intervenor under Rule 24(a) must show that none of the parties adequately represents its interests. Although the burden of showing inadequate representation usually is minimal, "when one of the parties is an arm or agency of the

-4-

government, and the case concerns a matter of sovereign interest, the bar is raised, because in such cases the government is presumed to represent the interests of all its citizens." *Mausolf*, 85 F.3d at 1303 (emphasis and internal quotation marks omitted). The government represents the interests of a movant "to the extent his interests coincide with the public interest." *Chiglo v. City of Preston*, 104 F.3d 185, 187-88 (8th Cir. 1997). Where the government would be "shirking its duty" to advance the "narrower interest" of a prospective intervenor "at the expense of its representation of the general public interest," then no presumption of adequate representation applies. *Mille Lacs Band of Chippewa Indians v. Minnesota*, 989 F.2d 994, 1000 (8th Cir. 1993) (quoting *Dimond v. District of Columbia*, 792 F.2d 179, 193 (D.C. Cir. 1986)).

The United States is a defendant in this action, but the Groups argue that the presumption of adequate representation should not attach because they face a narrower and more personal harm than the United States. They allege that their environmental and aesthetic interests in the land could be impaired by the outcome of this litigation, whereas the United States stands to lose only its own ownership interest in the Grasslands.

In determining whether to presume adequacy of representation by the sovereign, it is important to focus on what the case is about. The disputes in this lawsuit concern title to certain section lines, roads, rights-of-way, easements, and rights-of-entry in North Dakota. The Counties claim certain rights, and the United States denies them. As the district court correctly explained:

> [T]his is a quiet title action presenting basic questions of competing title interests. The best use of public lands is not at issue. This lawsuit is not about past or future land management decisions where the United States will have to balance varied interests, including conservation, in making land management decisions.

-5-

In defending title interests in public lands, the United States as sovereign is presumed to represent adequately the interests of its citizens. Although the Groups may have different reasons than the government for seeking to defeat the claims of the Counties (environmental interests rather than ownership interests), the interests of the Groups and the United States are aligned. The government's pursuit of the public interest in defending its title rights encompasses the parallel interests of the Groups in opposing the quiet title action brought by the Counties. Even as to the supposedly narrower interests urged by the Groups, moreover, this court in *Mausolf* ruled that an association's "conservation interests *are* concerns that the Government, as *parens patriae*, is charged with protecting, and that the presumption of adequate representation therefore applies" when a would-be intervenor seeks to advance environmental and aesthetic interests. 85 F.3d at 1303.

The Groups contend that even if the presumption of adequate representation applies, they have successfully rebutted it. They cite a history of conflict with the United States over management of the Grasslands. The government, they say, supports multiple uses for the land, while the Groups advocate exclusively for uses that are related to conservation and protection of the land. The Groups also point to the government's decision to settle a previous lawsuit concerning its past land management decisions. The settlement, they assert, shows that the United States may be satisfied with outcomes in this case that would damage the Groups' environmental interests in the Grasslands.

The presumption of adequate representation by the United States can be overcome only by "a strong showing of inadequate representation." *Little Rock Sch. Dist. v. N. Little Rock Sch. Dist.*, 378 F.3d 774, 780 (8th Cir. 2004). The Groups may rebut the presumption by "showing that the *parens patriae* has committed misfeasance or nonfeasance in protecting the public." *Chiglo*, 104 F.3d at 188. *Mausolf*, for example, involved a lawsuit over the validity of snowmobiling restrictions in a national park. This court held that the presumption was rebutted by

-6-

evidence that the United States previously had "waived and failed to enforce" regulations against snowmobile use, and had breached a statutory obligation to make a wilderness recommendation for the park. 85 F.3d at 1303. "Absent this sort of clear dereliction of duty, however, the proposed intervenor cannot rebut the presumption of representation by merely disagreeing with the litigation strategy or objectives of the party representing him." *Chiglo*, 104 F.3d at 188.

The Groups have not overcome the presumption of adequate representation. This lawsuit concerns a claim to quiet title to alleged rights-of-way on the Grasslands; it does not concern administrative decisions about how the Grasslands should be managed or used. The Groups' argument about its history of land use disputes with the United States is therefore beside the point. That the United States settled a lawsuit related *to use* of the Grasslands in a way that displeases the Groups does not suggest that the government will fail to defend its *ownership interest* in the land in the future. There is no evidence to show that the United States has failed to defend its title vigorously, and nothing in the record suggests that the government has been less than vigilant in its defense of the quiet title action thus far.

We therefore conclude that the interest of the United States in maintaining title to the Grasslands subsumes the interest of the Groups in preserving federal protection of those lands. The presumption of adequate representation applies, and the Groups have not rebutted the *parens patriae* presumption. The district court thus did not err in denying the Groups' motion to intervene as of right under Rule 24(a).

The district court also denied permissive intervention under Rule 24(b), citing the Groups' lack of Article III standing, their lack of a legally-protected interest in the litigation, and the potential for delay caused by the introduction of ancillary issues. A decision on this question is "wholly discretionary," and the "principal consideration" is "whether the proposed intervention would unduly delay or prejudice the adjudication of the parties' rights." *S.D. ex rel Barnett v. U.S. Dep't of Interior*,

317 F.3d 783, 787 (8th Cir. 2003).  Having concluded that the district court properly denied intervention as of right, and seeing no reason to second-guess the district court's concern about undue delay that could arise from the Groups "injecting issues unrelated to title into this quiet title action," we discern no abuse of discretion.

The order of the district court denying intervention is affirmed.

_____