PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

—————

No. 17-3679

—————

COMMONWEALTH OF PENNSYLVANIA

v.

PRESIDENT UNITED STATES OF AMERICA; ACTING
SECRETARY OF UNITED STATES DEPARTMENT OF
HEALTH AND HUMAN SERVICES; UNITED STATES
DEPARTMENT OF HEALTH AND HUMAN SERVICES;
SECRETARY OF THE TREASURY; UNITED STATES
DEPARTMENT OF THE TREASURY; SECRETARY
UNITED STATES DEPARTMENT OF LABOR; UNITED
STATES DEPARTMENT OF LABOR

*LITTLE SISTERS OF THE POOR SAINTS PETER AND
PAUL HOME,

Appellant

—————

* Pursuant to Fed. R. App. P. 12(a)

———————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-17-cv-4540)
District Judge: Honorable Wendy Beetlestone

———————

Argued March 23, 2018
Before: HARDIMAN, BIBAS, and ROTH, *Circuit Judges*.

(Filed:  April 24, 2018)

Nicole J. Boland
Jonathan S. Goldman
Office of Attorney General of Pennsylvania
Civil Division, Litigation Section
Strawberry Square
Harrisburg, PA 17120

Michael J. Fischer [Argued]
Office of Attorney General of Pennsylvania
1600 Arch Street, Suite 300
Philadelphia, PA 19103
        *Attorneys for Appellee*

Daniel H. Blomberg
Eric C. Rassbach
Mark L. Rienzi
Lori H. Windham [Argued]
Becket Fund for Religious Liberty
1200 New Hampshire Avenue, N.W., Suite 700
Washington, DC 20036

Nicholas M. Centrella
Conrad O'Brien
1500 Market Street
West Towers, Suite 3900
Philadelphia, PA 19102
          *Attorneys for Appellant*

_____

OPINION OF THE COURT

_____

HARDIMAN, *Circuit Judge*.

In this appeal, we review an order of the United States District Court for the Eastern District of Pennsylvania denying a motion to intervene filed by the Little Sisters of the Poor Saints Peter and Paul Home. The Little Sisters sought to intervene in litigation challenging regulations promulgated under the Patient Protection and Affordable Care Act. The District Court denied the motion, finding that the Little Sisters lacked a significantly protectable interest in the case and that their interests were adequately represented by the federal government. We will reverse.

3

I

The Little Sisters of the Poor are an international Roman Catholic congregation whose mission is to serve the elderly poor of all backgrounds. They operate more than 25 homes for the elderly in the United States, all of which adhere to the same religious beliefs. Each home is separately incorporated as a nonprofit but is "operated under the control" of the larger congregation. App. 82.

Appellant in this case is a religious nonprofit corporation that operates a Little Sisters home in Pittsburgh, Pennsylvania. The Little Sisters' interest in regulations implementing the Affordable Care Act is neither novel nor isolated. Indeed, they have been involved in litigation regarding the Affordable Care Act for years, and their attempt to intervene in this case must be considered in full context. Accordingly, we begin by describing the relevant portions of the Affordable Care Act and its regulatory scheme, along with the pertinent legal challenges filed by the Little Sisters and others.

A

The Affordable Care Act includes a provision that requires health plans to cover certain forms of preventive care for women without cost sharing, as specified in guidelines issued by an agency of the United States Department of Health & Human Services (HHS) called the Health Resources and Services Administration. *See* 42 U.S.C. § 300gg-13(a)(4). Preventive care under these guidelines includes: all contraceptive methods approved by the Food & Drug Administration, sterilization procedures, and related counseling and education. Unless an exemption applies, failure

4

to comply with the mandate renders a noncompliant employer subject to a penalty of $100 "for each day in the noncompliance period with respect to each individual to whom such failure relates." 26 U.S.C. § 4980D(b)(1). In common parlance, this coverage has come to be known as the "contraceptive mandate."

In 2011, HHS, along with the United States Departments of Labor and Treasury (collectively, the Departments) promulgated interim final regulations exempting certain religious employers from the contraceptive mandate. 76 Fed. Reg. 46,621 (Aug. 3, 2011). To be eligible, a religious employer had to (1) have the inculcation of religious values as its purpose; (2) primarily employ people who share its religious tenets; (3) primarily provide services to persons who share its religious tenets; and (4) be a church, its integrated auxiliary, a convention or association of a church, or "the exclusively religious activities of any religious order." *Id.* at 46,623; *see also* 26 U.S.C. § 6033(a)(3)(A)(i), (iii).

Almost two years after the interim final regulations were promulgated, the Departments issued a final rule in response to public input and various legal challenges. 78 Fed. Reg. 39,870 (July 2, 2013). That final rule altered the definition of an eligible religious employer by dropping the first three requirements, *id.* at 39,874, and it also provided an accommodation process for religious nonprofit organizations that did not meet this new definition. Such a religious nonprofit employer could avail itself of the accommodation if it (1) had religious objections to providing coverage for some or all of the required contraceptive services; (2) was "organized and operate[d] as a nonprofit entity;" (3) "[held] itself out as a religious organization;" and (4) "self-certifie[d] that it satisfie[d] the first three criteria." *Id.* Once an employer made

5

this self-certification to its insurer or third-party administrator, that entity would provide the mandated contraceptive services directly to women covered under the employer's plan. *Id.* at 39,875. Later, the Departments issued another rule that allowed entities eligible for the accommodation to directly notify HHS of a religious objection. 80 Fed. Reg. 41,318, 41,323 (July 14, 2015).[1] Through these two regulations, the self-certification accommodation sought to ensure that qualifying employers did not need to "contract, arrange, pay, or refer for contraceptive coverage," but their "plan participants and beneficiaries . . . [would] still benefit from separate payments for contraceptive services without cost sharing or other charge," as required by law. 78 Fed. Reg. at 39,874.

B

Two months after the final rule was issued in 2013, the Little Sisters of the Poor Home for the Aged, Denver, Colorado and the Little Sisters of the Poor, Baltimore, Inc. filed suit in the United States District Court for the District of Colorado. They claimed the contraceptive mandate was unconstitutional and that it violated the Religious Freedom Restoration Act (RFRA) and the Administrative Procedure Act (APA). *See Little Sisters of the Poor Home for the Aged v. Sebelius*, 6 F. Supp. 3d 1225, 1232–33 (D. Colo. 2013). With respect to RFRA, the Little Sisters asserted that the self-certification accommodation would force them to "take actions that directly cause others to provide contraception or appear to participate

---

[1] In response to *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751 (2014), the Departments also issued rules extending the accommodation to closely held for-profit entities with religious objections to providing contraceptive coverage. 80 Fed. Reg. 41,318, 41,324 (July 14, 2015).

in the Departments' delivery scheme," both of which would violate their religious conviction "that deliberately avoiding reproduction through medical means is immoral." *Little Sisters of the Poor Home for the Aged v. Burwell*, 794 F.3d 1151, 1167–68 (10th Cir. 2015). They sought a preliminary injunction, which the district court denied. The Tenth Circuit affirmed, holding that the regulations did not violate RFRA because they did not substantially burden religious exercise. *Id.* at 1205.

The Little Sisters sought certiorari, and the Supreme Court granted review in order to decide whether the self-certification accommodation violated RFRA. In addition to the Tenth Circuit's decision, the Court also granted certiorari to review decisions of the Third, Fifth, and D.C. Circuits, which were consolidated as *Zubik v. Burwell*, 136 S. Ct. 1557 (2016) (per curiam).

In *Zubik*, the Court did not answer the question "whether petitioners' religious exercise ha[d] been substantially burdened." *Id.* at 1560. Instead, it explained that both the petitioners and the government had "confirm[ed]" that "contraceptive coverage could be provided to petitioners' employees, through petitioners' insurance companies, without any . . . notice from petitioners." *Id.* at 1559–60. It then vacated the underlying judgments and remanded the cases, directing the parties to attempt "to arrive at an approach going forward that accommodates petitioners' religious exercise while at the same time ensuring that women covered by petitioners' health plans receive full and equal health coverage, including contraceptive coverage." *Id.* at 1560 (internal quotation marks and citation omitted). The Court found its instruction appropriate in light of "the substantial clarification and refinement in the positions of the parties" over the course

7

of the litigation. *Id.* Finally, it "anticipate[d] that the Courts of Appeals [would] allow the parties sufficient time to resolve any outstanding issues between them," *id.*, and it noted that the litigation sufficed to give the government notice of the petitioners' objections, such that "the Government may not impose taxes or penalties on petitioners for failure to provide the relevant notice," *id.* at 1561.

C

Two months after *Zubik* was decided, the Departments issued a request for information on "alternative ways . . . to obtain an accommodation, while still ensuring that women enrolled in the organizations' health plans have access to seamless coverage of the full range of . . . approved contraceptives without cost sharing." 81 Fed. Reg. 47,741, 47,741 (July 22, 2016). Six months later, the Departments concluded that no such "feasible approach" existed "at this time." DEP'T OF LABOR, FAQs About Affordable Care Act Implementation Part 36 at 4 (Jan. 9, 2017), *available at* https://www.dol.gov/sites/default/files/ebsa/about-ebsa/our-activities/resource-center/faqs/aca-part-36.pdf.

In May 2017, President Trump issued an executive order that directed the Departments to "consider issuing amended regulations, consistent with applicable law, to address conscience-based objections to the preventive-care mandate." Exec. Order No. 13,798, 82 Fed. Reg. 21,675, 21,675 (May 4, 2017). In response, the Departments issued two interim final rules (IFRs), one providing for a "religious exemption" and the other providing for a "moral exemption." Most relevant to this appeal, the "religious exemption" IFR applies to "entities, and individuals, with sincerely held religious beliefs objecting to contraceptive or sterilization

8

coverage," including "for-profit entities that are not closely-held." 82 Fed. Reg. 47,792, 47,808, 47,810 (Oct. 13, 2017). It also eliminates the need for exempt entities to comply with the self-certification accommodation and imposes no new notice requirements upon them. *Id.* at 47,808. The "moral exemption" IFR allows closely held nonprofit and for-profit entities to claim an exemption based on sincerely held moral beliefs. 82 Fed. Reg. 47,838, 47,849–52 (Oct. 13, 2017).

Five days after the IFRs were promulgated, the Commonwealth of Pennsylvania filed a civil action in the United States District Court for the Eastern District of Pennsylvania, alleging that the IFRs violate the Equal Protection and Establishment Clauses of the Constitution, Title VII of the Civil Rights Act, the Pregnancy Discrimination Act, and procedural and substantive provisions of the APA. Pennsylvania sought a declaratory judgment that both IFRs were unlawful, as well as preliminary and permanent injunctive relief. It claimed that the religious exemption IFR allows employers to opt out of providing no-cost contraceptive coverage, resulting in employees losing the preventive care mandated by the Affordable Care Act.

The Little Sisters moved to intervene either as of right under Rule 24(a) of the Federal Rules of Civil Procedure or alternatively for permissive intervention under Rule 24(b). The District Court denied the motion. It found intervention under Rule 24(a) inappropriate after concluding that the Little Sisters did not have a significantly protectable interest in the litigation and that their interests were adequately represented by the federal government. And it determined that intervention under Rule 24(b) would delay the litigation and "prejudice the interest of the parties in securing an efficient resolution" of the case. *Pennsylvania v. Trump*, 2017 WL 6206133, at \*5 (E.D.

Pa. Dec. 8, 2017). The Little Sisters appealed, and a week later the District Court issued an opinion and order granting Pennsylvania's request for preliminary injunctive relief. The federal government appealed the order granting the preliminary injunction, and this Court stayed that case pending the outcome of our decision in this appeal.

II[2]

The District Court had jurisdiction under 28 U.S.C. § 1331. "[W]e have jurisdiction under 28 U.S.C. § 1291 because the denial of a motion to intervene as of right is a final, appealable order." *Dev. Fin. Corp. v. Alpha Hous. & Health Care, Inc.*, 54 F.3d 156, 158 (3d Cir. 1995). We will overturn a district court's order denying a motion to intervene as of right only "if the court has abused its discretion by applying an improper legal standard or [by] reaching a conclusion we are confident is incorrect." *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 969 (3d Cir. 1998). We also review orders denying motions to intervene under Rule 24(b) for abuse of discretion, but "[w]e are more reluctant to intrude" into these "highly discretionary" decisions. *Brody ex rel. Sugzdinis v. Spang*, 957 F.2d 1108, 1115 (3d Cir. 1992).

---

[2] Because the Little Sisters moved to intervene as defendants and seek the same relief as the federal government, they need not demonstrate Article III standing. *See Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1651 (2017); *McConnell v. Fed. Election Comm'n*, 540 U.S. 93, 233 (2003) (assuming standing where original defendant had standing and intervenor-defendant sought same relief as that sought by defendant), *overruled on other grounds*, *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310 (2010).

## III

A party that has filed a timely motion has a right to intervene under Rule 24(a) if it can show three things: (1) a sufficient interest in the litigation; (2) "a threat that the interest will be impaired or affected, as a practical matter, by the disposition of the action"; and (3) that its interest is not adequately represented by the existing parties to the litigation. *Kleissler*, 157 F.3d at 969. Since there is no dispute that the Little Sisters' motion was timely, we consider these three elements in turn.

## A

Did the Little Sisters demonstrate a sufficient interest in the litigation? To meet this prong, the Supreme Court has held that an applicant must assert an interest that is "significantly protectable." *Donaldson v. United States*, 400 U.S. 517, 531 (1971). We have interpreted this to mean "a cognizable legal interest, and not simply an interest of a general and indefinite character." *Brody*, 957 F.2d at 1116 (internal quotation marks and citation omitted). An applicant must therefore demonstrate that its interest is "specific to [it], is capable of definition, and will be directly affected in a substantially concrete fashion by the relief sought." *Kleissler*, 157 F.3d at 972. Given these standards, it is not surprising that "[t]he facts assume overwhelming importance in each decision." *Id.*

The Little Sisters seek to intervene to defend only the portions of the religious exemption IFR that apply to them. *See Benjamin ex rel. Yock v. Dep't of Pub. Welfare*, 701 F.3d 938, 951 (3d Cir. 2012) (noting that a "proposed intervenor[] need not possess an interest in each and every aspect of the litigation" and "[is] entitled to intervene as to specific issues so

long as their interest in those issues is significantly protectable" (citation omitted)). In their motion, the Little Sisters argued that the civil action brought by the Commonwealth would harm them by narrowing or eliminating the protection conferred by the Supreme Court in *Zubik* and by invalidating the regulatory protection afforded to them under the IFR. If those things come to pass, the Little Sisters claim, they will be "forced to choose between violating their faith and paying crippling fines." ECF 19-1 at 12 (Mem. of Law in Support of Mot. to Intervene).

Contrary to the District Court's decision, we agree with the Little Sisters that their interest in preserving the religious exemption is concrete and capable of definition. We also agree that the relationships among the various homes run by the Little Sisters of the Poor Congregation, including the two entities that were parties in *Zubik*, confirm that the Little Sisters have a unique interest compared to other religious objectors who might wish to intervene. We therefore conclude that those interests are significantly protectable.

First, the Little Sisters have a significantly protectable interest in the continued protection afforded by *Zubik*. This litigation has the potential to reopen issues that turn on the meaning of RFRA as it bears on self-certification, potentially influencing any substantive outcome. The Commonwealth's APA challenge calls into question whether the new religious exemption is required by RFRA and therefore justifies bypassing notice-and-comment rulemaking to issue the IFRs quickly. If this Court were to reach the RFRA issue, we would be answering the very question the Supreme Court chose not to address in *Zubik*, *i.e.*, whether the self-certification process imposes a substantial burden on the Little Sisters' sincerely held religious beliefs. Answering that question in the negative surely would impair the protection conferred by *Zubik*.

12

Second, the Little Sisters have a significantly protectable interest in the religious exemption IFR, since it constitutes the very "approach" contemplated by *Zubik*. 82 Fed. Reg. at 47,814 ("These [IFRs] provide a specific policy resolution that courts have been waiting to receive from the Departments for more than a year."). The Little Sisters have litigated for the protection conferred by the religious exemption IFR for five years, and the IFR describes the Little Sisters as one impetus for change. *Id.* at 47,798. It stands to reason, then, that the Little Sisters have a significantly protectable interest in whether the approach contemplated by *Zubik*, as manifested in the religious exemption IFR, ultimately prevails.

We faced an analogous scenario in *Kleissler*, where one of the timber companies had won a bid for a contract, and the bid was threatened by an environmental suit against the municipality. 157 F.3d at 973. We granted intervention as of right, reasoning that the accepted bid, while not a contract, amounted to a protectable legal interest. *Id.* The same logic applies here.

For all of these reasons, the Little Sisters have demonstrated that this litigation implicates their legally cognizable interests relating to both the religious exemption IFR and *Zubik*. We are confident the District Court erred in holding otherwise.

B

Having concluded that the Little Sisters have a sufficient interest in the litigation, we now consider whether that interest "is in jeopardy in the lawsuit." *Brody*, 957 F.2d at 1122. To meet this requirement, an applicant "must

13

demonstrate that [its] legal interests may be affected or impaired[] as a practical matter by the disposition of the action." *Id.* (citation omitted). However, "[i]t is not sufficient that the claim be incidentally affected; rather, there must be a tangible threat to the applicant's legal interest." *Id.* at 1123 (internal quotation marks and citation omitted). Because our focus is on the "practical consequences" of the litigation, we "may consider any significant legal effect on the applicant's interest," including a decision's stare decisis effect or a proposed remedy's impact on the applicant for intervention. *Id.* at 1122–23 (citation omitted). We have also stated a "policy preference which, as a matter of judicial economy, favors intervention over subsequent collateral attacks." *Kleissler*, 157 F.3d at 970 (citation omitted).

Thus, we must determine whether the Commonwealth of Pennsylvania's civil action poses a tangible threat to the Little Sisters' interests. In arguing that no threat exists, the Commonwealth claims that the injunctive and declaratory relief it seeks will simply preserve the status quo, under which *Zubik* "fully protect[s]" the Little Sisters from the imposition of fines. Commonwealth Br. 19. To support this argument, Pennsylvania emphasizes that the Little Sisters have not lost their protection under *Zubik* in the months since the District Court granted preliminary injunctive relief, so "no outcome in this case presents a 'tangible threat' to the Little Sisters' 'legally cognizable' interests." *Id.*

We disagree with this view, which the District Court adopted, and we conclude that the Commonwealth's contentions are based on an incomplete reading of *Zubik*. Far from providing permanent protection, *Zubik* afforded the parties merely "an opportunity" to arrive at a suitable compromise. 136 S. Ct. at 1560. Furthermore, the Supreme

14

Court instructed the courts of appeals to provide the parties with "sufficient time" to settle their differences. *Id.* But what if the parties are unable to settle their differences within what the courts of appeals deem "sufficient time"? In that event, the appellate courts will have no choice but to revisit the merits of the RFRA questions in light of the parties' "significantly clarified" views. *See id.*

As the religious exemption IFR indicates, one court of appeals was close to reaching that point a year ago. In March of 2017, the Seventh Circuit requested "a report of an agreement to resolve the case or detailed reports on the parties' respective positions." 82 Fed. Reg. at 47,814 (quoting ECF 130, *Univ. of Notre Dame v. Sebelius*, 743 F.3d 547 (7th Cir. 2014) (No. 13-3853)).[3] Absent such an agreement by May 1, 2017, the Seventh Circuit "plan[ned] to schedule oral argument on the merits of the case on short notice." *Id.* The Departments subsequently notified the court of the impending rulemaking. *Id.* Though that case was later voluntarily dismissed, the Seventh Circuit's order makes clear that the Supreme Court's decision in *Zubik* lacks the kind of permanency ascribed to it by the Commonwealth here. Should the federal government have to engage in a new rulemaking process, there is no guarantee that the Little Sisters will remain protected under *Zubik*. In this regard, the District Court found that the Little Sisters have recourse through the litigation brought in the Tenth Circuit by their colleagues. However, "[a]n applicant need not . . . prove that [it] would be barred from bringing a

---

[3] The Supreme Court had previously granted certiorari and vacated the judgment in that case in light of *Zubik*. *See Univ. of Notre Dame v. Burwell*, 136 S. Ct. 2007 (2016).

later action or that intervention constitutes the only possible avenue of relief." *Brody*, 957 F.2d at 1123.

And, as already discussed, the pending litigation poses a tangible threat to the Little Sisters' regulatory protection because it has the potential to declare that exemptions from the self-certification accommodation are not required by RFRA. Such a determination could affect how the government proceeds in future rulemakings, including whether it provides alternatives to the self-certification accommodation. This, in turn, could affect whether the Little Sisters will remain exempt from the mandate. Accordingly, we conclude that the Little Sisters have demonstrated that they may be "practically disadvantaged by the disposition of the action." *Benjamin*, 701 F.3d at 951 (citation omitted). They therefore meet the impairment requirement.

C

Finally, we evaluate whether the Little Sisters have established that their interests are not adequately represented by the federal government. We have held that an applicant's interests are not adequately represented if they diverge sufficiently from the interests of the existing party, such that "the existing party cannot devote proper attention to the applicant's interests." *United States v. Territory of the Virgin Islands*, 748 F.3d 514, 520 (3d Cir. 2014). This burden is generally "treated as minimal" and requires the applicant to show "that representation of his interest '*may be*' inadequate." *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 368 (3d Cir. 1995) (emphasis added) (quoting *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972)).

Notwithstanding that minimal burden, a rebuttable presumption of adequacy applies "if one party is a government entity charged by law with representing the interests of the applicant for intervention." *Virgin Islands*, 748 F.3d at 520 (citation omitted). But even when the government is a party, "[t]he burden of establishing inadequacy of representation . . . varies with each case." *Kleissler*, 157 F.3d at 972. For that reason, the presumption is particularly strong when the governmental and private interests "closely parallel" one another, *id.*, or are "nearly identical," *Virgin Islands*, 748 F.3d at 525. In those cases, a proposed intervenor will overcome the presumption only with a "compelling showing." *Id.* at 520 (quoting *Mountain Top*, 72 F.3d at 369). By contrast, "when an agency's views are necessarily colored by its view of the public welfare rather than the more parochial views of a proposed intervenor whose interest is personal to it, the burden is comparatively light." *Kleissler*, 157 F.3d at 972. The same holds true when the government is charged with serving "two distinct interests, which are related, but not identical." *Trbovich*, 404 U.S. at 538.

The parties dispute the degree of divergence between the interests of the Little Sisters on the one hand and those of the federal government on the other. The Commonwealth contends that the Little Sisters and the government are in "lockstep" because they both seek to defend the validity of the IFRs. Commonwealth Br. 16. In support, the Commonwealth relies heavily on *United States v. Territory of the Virgin Islands*, 748 F.3d at 522. In that case, we held that an inmate had no right to intervene in litigation brought by the United States to remedy prison conditions because his interests were "essentially identical" to those of the federal government. *Id.* The Little Sisters respond by citing our decision in *Kleissler v.*

17

*United States Forest Service*, 157 F.3d at 967, where we recognized the right of timber contractors, municipalities, and school districts to intervene in litigation brought by an environmental public interest group to enjoin logging activities in a national forest. The Little Sisters argue that here, as in *Kleissler*, the government must defend "numerous complex and conflicting interests," *id.* at 973, including the rights of nonprofit and for-profit religious objectors, moral objectors, and women seeking access to contraceptive services. Without the right to intervene, the Little Sisters contend that their "straightforward" interests "may become lost in [this] thicket of sometimes inconsistent governmental policies." *Id.* at 973–74.

We recognize that the Little Sisters' situation is not perfectly analogous to *Kleissler* and other cases holding that the government did not adequately represent a private party's interests. *See Benjamin*, 701 F.3d at 958; *Kleissler*, 157 F.3d at 973–74; *Brody*, 957 F.2d at 1124. Nevertheless, the unique position in which *Zubik* has placed the federal government renders this case sufficiently similar to those decisions for us to conclude that the Little Sisters carry a "comparatively light" burden here and have overcome the presumption. *See Kleissler*, 157 F.3d at 972. First, the Little Sisters' situation is similar to *Trbovich*, where a statute obligated the Secretary of Labor to uphold the "related[] but not identical" interests in enforcing the rights of union members against their union as well as the "public interest" in assuring free and democratic union elections. 404 U.S. at 538–39. *Zubik* likewise tasked the government with serving two related interests that are not identical: accommodating the free exercise rights of religious objectors while protecting the broader public interest in access to contraceptive methods and services. And like *Benjamin*, the

18

*Zubik* compromise must balance the rights of "two groups with quite divergent desires and interests." 701 F.3d at 958. Finally, as in *Kleissler*, the government must defend "numerous complex and conflicting interests." 157 F.3d at 973. The religious exemption IFR applies not only to religious nonprofit corporations like the Little Sisters, but also to closely held and publicly traded for-profit corporations. And the moral exemption IFR protects parties for reasons unrelated to religion. The religious and moral interests of these entities are numerous and varied. Accordingly, there is no guarantee that the government will sufficiently attend to the Little Sisters' specific interests as it attempts to uphold both IFRs in their entirety. *See Kleissler*, 157 F.3d at 967 (concluding that the proposed intervenors had carried their burden by showing "a reasonable doubt whether the government agency would adequately represent [their] concerns").

The preceding discussion also demonstrates why our decision in *Virgin Islands* is inapposite. We determined there that the interests of the putative intervenor and the government were "essentially identical," 748 F.3d at 522, but for reasons that do not apply here. First, the inmate in that case "extensively quote[d]" from the government's pleadings, *id.* at 521, which the Little Sisters have not done. Second, the United States sought to remedy several allegedly unconstitutional prison conditions, *id.* at 518, which meant that the inmate who moved to intervene was one of "the *exact constituents*" the government attempted to protect, and both parties shared the same interest in ensuring that any remedy was "strictly enforced," *id.* at 523. Unlike that situation, here the IFRs protect more than religious nonprofits like the Little Sisters, and the Little Sisters do not share the government's interest in upholding every aspect of both IFRs. Accordingly, with an eye

19

toward the "elasticity" and "flexibility" that Rule 24 contemplates, *Kleissler*, 157 F.3d at 970, 971, and cognizant of the highly fact-bound nature of requests to intervene under Rule 24(a), we conclude that the Little Sisters' interests may not be adequately represented by the federal government.[4] Therefore, we must reject the District Court's contrary holding, which improperly applied our precedent.

IV

For the reasons stated, we will reverse the District Court's order denying the Little Sisters' motion to intervene under Rule 24(a), and we will remand the case to permit intervention for the purpose of defending the portions of the religious exemption IFR that apply to religious nonprofit entities.

---

[4] Because we hold that the Little Sisters meet the requirements to intervene as of right, we need not review the District Court's ruling regarding permissive intervention.