TYMKOVICH, Chief Judge, dissenting.
Kane County and the State of Utah are engaged in protracted litigation against the United States under the Quiet Title Act. In 2008, the district court denied the Southern Utah Wilderness Alliance's first attempt to intervene as of right under Federal Rule of Civil Procedure 24(a), and this court affirmed that judgment on appeal in 2010, finding the United States adequately represented SUWA's purported interest. See Kane Cty. v. United States , 597 F.3d 1129 (10th Cir. 2010) ( Kane Cty. I ).
Today, however, this court reaches the opposite conclusion. I respectfully dissent. In my view, SUWA has not demonstrated a concrete injury giving it standing to pursue a claim in federal court, nor can it meet the requirements for mandatory intervention under Rule 24.
I will first address our jurisdiction and explain why I believe SUWA lacks standing to intervene, both under Article III and under the third-party standing doctrine. Then I will explain why, even if SUWA has standing, the district court applied the correct standard of review and did not err in denying intervention.
A. Jurisdiction
"Standing is a threshold issue in every case before a federal court." Phila. Indem. Ins. Co. v. Lexington Ins. Co. , 845 F.3d 1330, 1334 (10th Cir. 2017). Our precedent is clear that a prospective intervenor must possess Article III standing. United States v. Colo. & E. R.R. Co. , 882 F.3d 1264, 1269 (10th Cir. 2018) ; Safe Streets All. v. Hickenlooper , 859 F.3d 865, 913 (10th Cir. 2017) ; see also Town of Chester v. Laroe Estates, Inc. , --- U.S. ----, 137 S. Ct. 1645, 1651, 198 L.Ed.2d 64 (2017) ; Hollingsworth v. Perry , 570 U.S. 693, 704, 133 S.Ct. 2652, 186 L.Ed.2d 768 (2013).
Ensuring that every party before a federal court possesses standing is essential because of the doctrine's underpinnings in Article III of the Constitution, which confines federal courts to adjudicating "cases" and "controversies." U.S. Const. art. III, § 2, cl. 1. The doctrine also reflects "the separation-of-powers principles underlying that limitation." Lexmark Int'l, Inc. v. Static Control Components, Inc. , 572 U.S. 118, 134 S. Ct. 1377, 1386, 188 L.Ed.2d 392 (2014). Entertaining parties that lack standing effectively disregards the constitutional limits that circumscribe the power of federal courts. This is because "an Article III case or controversy joined by an intervenor who lacks standing ceases to be an Article III case or controversy." See N. Dakota ex rel. Stenehjem v. United States , 787 F.3d 918, 920 (8th Cir. 2015).
In prior cases involving SUWA, our circuit concluded that SUWA and other "parties seeking to intervene under Rule 24(a) or (b) need not establish Article III standing so long as another party with constitutional *898 standing on the same side as the intervenor remains in the case." San Juan Cty. v. United States , 503 F.3d 1163, 1172 (10th Cir. 2007) (en banc) (internal quotation marks omitted). But San Juan County 's "piggyback standing" rule has since been abrogated. In 2013, the Supreme Court held that "any person invoking the power of a federal court must demonstrate standing to do so," Hollingsworth , 570 U.S. at 704, 133 S.Ct. 2652 (emphasis added), and affirmed that a prerequisite to "intervene[ ] to defend" one's interest is "to assert an injury in fact of his own," id. at 708, 133 S.Ct. 2652. Three years later, the Supreme Court unanimously affirmed "an intervenor of right must have Article III standing in order to pursue relief that is different from that which is sought by a party with standing." Town of Chester , 137 S. Ct. at 1651.
The majority opinion here says SUWA seeks relief identical to the United States because the government has committed to "retention of the maximum amount of property" and will argue for "the smallest widths [it] can based on the historical evidence." See op. at 887. But this finding conflicts with the majority's later conclusion that the United States may not adequately represent SUWA's interests because "SUWA's and the United States' interests are not identical," id. at 895, with respect to the scope of Kane County's asserted rights-of-way. See also id. at 895 ("SUWA is focused on pursuing the narrowest scope [of road width], but many of the stakeholders involved may want wider roads. The Unites States represents these broad-ranging and competing interests, too."). If SUWA seeks identical relief to the United States-that is, federal retention of the maximum amount of property-then the United States provides adequate representation of SUWA's interests, as we acknowledged in Kane County I . If SUWA seeks relief different from the United States-because the government does not, in fact, wish to retain maximum property-then SUWA must demonstrate that it possess standing according to Town of Chester .[1]
This circuit has recognized the Supreme Court's abrogation of San Juan County 's piggyback rule for intervenor standing in several published opinions, regardless of whether the remedy sought is identical. In Safe Streets Alliance , we affirmed that " Rule 24(a) 's provisions cannot remove the Article III hurdle that anyone faces when voluntarily seeking to enter a federal court." 859 F.3d at 912. We also recognized "[t]he Supreme Court has held, moreover, that Article III's requirements apply to all intervenors, whether they intervene to assert a claim or defend an interest." Id. (emphasis added). We reaffirmed that principle again last year: "Any party, whether original or intervening, that seeks relief from a federal court must have standing to pursue its claims." United States v. Colo. & E. R.R. Co. , 882 F.3d 1264, 1269 (10th Cir. 2018) (quoting City of Colo. Springs v. Climax Molybdenum Co. , 587 F.3d 1071, 1078 (10th Cir. 2009) ) (emphasis added).
*899 Despite SUWA's assertions to the contrary, our precedent shows SUWA must demonstrate it possesses independent Article III standing to intervene in this litigation. Nevertheless, the majority opines that SUWA need not establish independent standing so long as the United States remains a party. This conclusion is, in my view, a return to the abrogated reasoning of San Juan County in violation of clear, binding precedent.
The majority goes on to say that, in any case, SUWA has established standing. Our Article III and third-party standing doctrines indicate otherwise.
1. Constitutional Standing
To establish Article III standing, an intervenor must first demonstrate "an 'injury in fact'-an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." Lujan v. Defs. of Wildlife , 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (cleaned up). "Second, there must be a causal connection between the injury and the conduct complained of-the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." Id. (cleaned up). "Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be redressed by a favorable decision." Id. at 561, 112 S.Ct. 2130 (some internal quotation marks omitted).
An organization such as SUWA may assert associational standing if "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Collins v. Daniels , 916 F.3d 1302, 1312 (10th Cir. 2019).
SUWA asserts its environmental concern is "a legally protectable interest" for purposes of Article III standing. San Juan Cty. , 503 F.3d at 1199. SUWA reasons that a wider right-of-way determination would lead Kane County to permit greater vehicular traffic, which in turn would cause a concrete and particularized injury to its environmental interests, and that this injury could be redressed by a successful defense limiting the length and width of the roads.
An injury-in-fact must be both concrete and particularized and actual or imminent. The asserted injury cannot merely be speculative, however. The "threatened injury must be certainly impending to constitute injury in fact" and "allegations of possible future injury are not sufficient." Clapper v. Amnesty Int'l USA , 568 U.S. 398, 409, 133 S.Ct. 1138, 185 L.Ed.2d 264 (2013) (cleaned up); see also Summers v. Earth Island Inst. , 555 U.S. 488, 499, 129 S.Ct. 1142, 173 L.Ed.2d 1 (2009).
SUWA is correct that environmental interests, such as "the desire to use or observe an animal species, even for purely esthetic purposes, is undeniably a cognizable interest for purpose of standing." Lujan , 504 U.S. at 562-63, 112 S.Ct. 2130 ; see also S. Utah Wilderness All. v. Palma , 707 F.3d 1143, 1155-56 (10th Cir. 2013) (holding SUWA's environmental interests sufficiently concrete and particularized to challenge drilling leaseholds). But SUWA merely conjectures that (1) the United States will not zealously defend its title to the relevant roads, (2) the title adjudication will thus lead to an appreciably different outcome regarding pre-1976 uses, (3) this appreciable difference will lead Kane County to open the relevant roads to greater vehicular traffic than it would have otherwise, and finally (4) the greater vehicular *900 traffic will, at the margin, cause aesthetic environmental injury to SUWA members who may return to the particular areas in the future.
As was the case in Clapper , the path leading to SUWA's asserted injury is too attenuated to establish Article III standing. This chain of events relies on a patchwork of assumptions and possibilities resulting from the decisions of multiple actors, each with its own interests and institutional checks. A proposed party cannot rely on mere "speculation" that its members who have visited the relevant environmental locale "will find their recreation burdened" in the future due to an uncertain chain of events. Earth Island , 555 U.S. at 499, 129 S.Ct. 1142. Similarly, in Palma we dismissed SUWA's administrative challenge to BLM drilling permits as unripe for judicial review because "[t]here [was] simply too much uncertainty as to when and what type of drilling, if any, [would] occur on the thirty-nine contested leases." 707 F.3d at 1160.
For these reasons, I would find SUWA's alleged injury is not an imminent injury-in-fact for purposes of Article III standing.
2. Third-Party Standing
Even if SUWA could assert constitutional standing, it would lack standing under the third-party standing doctrine. "[A] party generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." Kowalski v. Tesmer , 543 U.S. 125, 129, 125 S.Ct. 564, 160 L.Ed.2d 519 (2004) (internal quotation marks omitted); see also Collins , 916 F.3d at 1312-13.
An exception to this rule may apply when "the party asserting the right has a close relationship with the person who possesses the right [and] there is a hindrance to the possessor's ability to protect his own interests." Sessions v. Morales-Santana , --- U.S. ----, 137 S. Ct. 1678, 1689, 198 L.Ed.2d 150 (2017). That exception does not apply here. SUWA has no special relationship with the United States and there is no barrier preventing the United States from asserting its right to title.
This court previously applied the third-party standing rule to hold SUWA lacked prudential standing "to vindicate the property rights of the federal government" in a nearly identical quiet title action. Wilderness Soc'y v. Kane Cty. , 632 F.3d 1162, 1165 (10th Cir. 2011) (en banc). In that case, we found SUWA improperly "rest[ed] its claims on the federal government's property rights" and failed to "assert a valid right to relief of its own." Id. at 1170. Even the dissent recognized that, if the statutory cause of action properly belonged to the United States, SUWA might not have standing. See id. at 1189-90 (Lucero, J., dissenting) (emphasizing the claim-focused nature of prudential standing and distinguishing Warth v. Seldin , 422 U.S. 490, 509-10, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) ).[2]
After Wilderness Society , the Supreme Court substantially narrowed the category of prudential standing. See Lexmark , 572 U.S. 118, 134 S.Ct. 1377, 188 L.Ed.2d 392. The Court did not, however, revisit the doctrine of third-party standing. See *901 id. at 127 n.3, 134 S.Ct. 1377 ("This case does not present any issue of third-party standing, and consideration of that doctrine's proper place in the standing firmament can await another day."). The Supreme Court noted the third-party standing rule is "closely related to the question whether a person in the litigant's position will have a right of action on the claim." Id. (internal quotation marks omitted).[3]
Because Lexmark did not eliminate the third-party standing rule, our determination in Wilderness Society remains sound. Indeed, in light of Lexmark , its logic appears even stronger in this case. The only issue on remand from the 2014 appeal is the length and width of Kane County's easements. An organization in SUWA's position does not possess a cause of action under the Quiet Title Act because it does not assert title to the roads. See 28 U.S.C. § 2409a(a), (d). The cause of action properly belongs to Kane County and Utah, because they do assert title. Even if we assume SUWA will certainly suffer environmental injury, "that doesn't necessarily demonstrate that [it] has prudential standing to bring its ... claims." VR Acquisitions, LLC v. Wasatch Cty. , 853 F.3d 1142, 1147 (10th Cir. 2017) ; see also Hornish v. King Cty. , 899 F.3d 680, 692 (9th Cir. 2018) (finding a party that possesses "no property interests" in disputed land "cannot allege any injury to such interests, and therefore lack[s] standing" in a quiet title action).
Because SUWA's claim to relief rests "on the legal rights or interests of third parties," Kowalski , 543 U.S. at 129, 125 S.Ct. 564, I would also find SUWA lacks standing under the third-party standing doctrine.
B. Intervention
Even if SUWA possessed standing to intervene, the district court did not abuse its discretion in determining SUWA fails to satisfy the Rule 24 requirements. Under Rule 24, an applicant may timely intervene as of right if it
claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.
Fed. R. Civ. P. 24(a)(2). SUWA alleges it has an interest related to the property that may be impaired in the litigation and the United States may not adequately represent its interest.
1. Standard of Review
"We review the district court's denial of a motion for reconsideration for abuse of discretion." United States v. Randall , 666 F.3d 1238, 1241 (10th Cir. 2011). "Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." Servants of Paraclete v. Does , 204 F.3d 1005, 1012 (10th Cir. 2000). "It is not appropriate *902 to revisit issues already addressed or advance arguments that could have been raised in prior briefing." Id.
SUWA argues the district court improperly characterized its filing as a motion to reconsider, and that we should treat its motion as one to intervene. The majority agrees and proceeds to analyze the Rule 24 requirements of interest, impairment, and adequate representation de novo, relying on City of Colorado Springs v. Climax Molybdenum, Co. , 587 F.3d 1071, 1078 (10th Cir. 2009). But Climax does not analyze why the standard of review should be de novo in such a case-though presumably it was because the issue was not raised or even considered by the court. In any event, its statement that the standard of review would be de novo is pure dicta because the court never reached the merits. And this court's assurances in San Juan County and Kane County I that SUWA could always renew its motion to intervene at a later date said nothing about what the proper standard of review would be in such an instance.
On the contrary, successive motions for intervention in the same case are frequently treated as motions to reconsider. See, e.g. , Abeyta v. City of Albuquerque , 664 F.3d 792, 796 (10th Cir. 2011) (a second motion to intervene is, in effect, a motion to reconsider); Plain v. Murphy Family Farms , 296 F.3d 975, 978 (10th Cir. 2002) (same); see also Whitewood v. Sec'y Pa. Dep't of Health , 621 F. App'x 141, 144 (3d Cir. 2015) (unpublished) (finding a successive motion for intervention was properly treated as a motion for reconsideration); Calvert Fire Ins. Co. v. Environs Dev. Corp. , 601 F.2d 851, 857 (5th Cir. 1979) (same).
This result is rooted in the law-of-the-case doctrine and the mandate rule. See Huffman v. Saul Holdings Ltd. P'ship , 262 F.3d 1128, 1132-33 (10th Cir. 2001) ; see also Ransmeier v. Mariani , 486 F. App'x 890, 892 (2d Cir. 2012) (treating a successive motion to intervene as foreclosed by the law of the case). This is because once "a case is appealed and remanded, the decision of the appellate court establishes the law of the case and ordinarily will be followed by both the trial court on remand and the appellate court in any subsequent appeal." Huffman , 262 F.3d at 1132. A district court may deviate from the law-of-the-case doctrine and mandate rule when one of the Paraclete circumstances is present: (1) a dramatic change in legal authority, (2) significant new evidence unobtainable earlier, or (3) blatant error resulting in manifest injustice. See id at 1133. And of course, such circumstances are the same as those justifying a motion to reconsider, which is reviewed for abuse of discretion.
Furthermore, as the majority acknowledges, SUWA based its renewed motion for intervention on changed circumstances-namely a new legal and political landscape. See App. 119. SUWA's reliance on an intervening change of law or fact tracks the test for a motion to reconsider, not a motion to intervene. See Paraclete , 204 F.3d at 1012 ; see also F.W. Kerr Chem. Co. v. Crandall Assoc., Inc. , 815 F.2d 426, 428 (6th Cir. 1987) ("[A] successive motion [must] state new facts warranting reconsideration of the prior decision.").
In summary, I would apply the abuse of discretion standard to evaluate whether the district court properly denied SUWA's successive motion to intervene. That standard is more consistent with the law-of-the-case doctrine and more suitable to SUWA's changed-circumstance arguments.
2. Impaired Interest
SUWA argues intervention is proper because it has an environmental interest relating *903 to wilderness lands and resources that are crossed by or adjacent to the three disputed roads. It asserts the district court erred in finding no changed circumstances under which the court should revisit its prior ruling on SUWA's impaired interest related to the roads.
This court applies a fact-specific inquiry to determine whether a proposed intervenor possesses an interest satisfying the requirements of Rule 24(a)(2) and (3). San Juan Cty. , 503 F.3d at 1199. The district court employed this method when it ruled on SUWA's first motion to intervene. See Kane Cty. v. United States , No. 2:08-CV-315, 2009 WL 959804 (D. Utah Apr. 6, 2009). There, the district court noted the "factual underpinnings of continuing controversy" that existed in San Juan County did not exist in the instant case. Id. at *2. It also observed title was the only issue in dispute, not the management of adjacent lands or whether the roads would be open to the public once title is ascertained. Id. On appeal in 2010, we declined to decide whether "SUWA has an interest in the quiet title proceedings at issue." Kane Cty. I , 597 F.3d at 1133.
We have previously said " Rule 24(a)(2) does not speak of 'an interest in the property'; rather, it requires only that the applicant for intervention 'claim[ ] an interest relating to the property or transaction which is the subject of the action." San Juan Cty. , 503 F.3d at 1200 (quoting Fed. R. Civ. P. 24(a)(2) (emphasis added). Indeed, in San Juan County , we applied a fact-specific inquiry to conclude "SUWA's environmental concern [was] a legally protectable interest" related to the specific lands at issue in that case. Id. at 1199.[3] In Kane County I , however, we acknowledged " San Juan County does not mandate a particular outcome in this case," given the fact-dependent nature of the inquiry. 597 F.3d at 1134.
Now that the issue is before us once again, I would conclude the district court reasonably determined the applicable law and issues on partial remand were the same as they were when the district court rendered its initial decision on SUWA's motion to intervene. Thus, in my view, the district court did not abuse its discretion in denying SUWA's motion to reconsider.
SUWA relies on Utah Association of Counties v. Clinton , 255 F.3d 1246 (10th Cir. 2001), to argue that anything but the narrowest title determination will impair its environmental interest, and the court appears to adopt this reasoning, see op. at 891-92. But unlike Utah Association of Counties , which involved the designation of a national monument and necessarily required balancing competing perspectives of the public interest, see 255 F.3d at 1248, this action simply addresses title. Quieting title does not bring any new rights into existence or require evaluation of the public interest, it merely clarifies already existing property rights based on historical uses.[4] See Stenehjem , 787 F.3d at 921. The *904 district court's final determination of title does not change land management or status. More importantly, the question on partial remand is even narrower than it was the last time the district court denied intervention: title to the easements has been ascertained and only the length and width of those easements is now in question. That inquiry turns only on pre-1976 use and does not require evaluation of competing public interests.
Because no intervening change of fact or law with respect to SUWA's alleged interest compels a different result, the district court did not abuse its discretion in declining to reconsider SUWA's motion for intervention. The district court's decision does not prevent SUWA from presenting its environmental concerns as amicus, nor does it preclude SUWA from asserting its alleged interests through other lawsuits or administrative challenges to federal use or management of lands adjoining the road easements.
3. Adequate Representation
We presume adequate representation "when the objective of the applicant for intervention is identical to that of one of the parties." San Juan Cty. , 503 F.3d at 1204. This presumption applies "when the government is a party pursuing a single objective." Id. The majority opines that, like WildEarth Guardians v. United States Forest Service , 573 F.3d 992, 994-97 (10th Cir. 2009), and Utah Association of Counties , the presumption of adequate representation does not apply because the government has multiple objectives and must consider a broad spectrum of views. But as I have already noted, this action simply addresses title. Although a shift in government policy may be enough to upset the presumption of adequate representation in an Administrative Procedure Act challenge, such as in WildEarth or Utah Association of Counties , it is difficult to see how it could be enough in a Quiet Title Act action that turns solely on pre-1976 use and does not involve any question of land-use or management policy. WildEarth itself said as much when it distinguished San Juan County : "We were not informed of any potential federal policy that could be advanced by the government's relinquishing its claim of title to the road." 573 F.3d at 997.
The last time this court considered SUWA's motion to intervene in this litigation, it held SUWA had failed to carry its minimal burden of demonstrating inadequate representation. We observed that "SUWA's disagreement with the United States' land management decisions in the past does not demonstrate that the United States is an inadequate representative in this title dispute, which is ultimately grounded in non-federal activities that predate those management decisions." Kane Cty. I , 597 F.3d at 1135. Furthermore, we noted SUWA had waived the argument "that SUWA and the United States might disagree as to the potential scope of Kane County's purported rights-of-way." Id. Today, the majority resurrects an argument we ruled dead-on-arrival in Kane County I and essentially offers SUWA a second chance to cure its waiver.
SUWA emphasizes two circumstances it says have changed since the courts last considered its motion to intervene: (1) the change in presidential administration, and (2) the length and width of the three rights-of-way is now squarely presented to *905 the district court and may be settled by the parties.
With respect to the first circumstance, SUWA extensively relates how the current presidential administration and BLM's approach to wilderness protection differs from that of their predecessors and explains the adversarial relations between itself and the new administration. This argument is nearly identical, as the government points out, to the argument SUWA raised and we rejected in the previous appeal-namely, that SUWA's "history of adversarial relations between itself and [federal defendants]" is inconsistent with adequate representation. Id. at 1134.
Moreover, SUWA's perceived disagreements with the current presidential administration or BLM over land-management policy bears little relation to how the United States will defend title to the roads themselves.[5] In some cases-such as an APA suit against federal land-management policy, in which the government has multiple objectives and must balance a variety of public and private interests-a change of presidential administration can constitute a change in circumstance justifying reconsideration of adequate representation. See W. Energy All. v. Zinke , 877 F.3d 1157, 1169 (10th Cir. 2017). Indeed, all the cases the majority cites are APA challenges of this sort. But a change in presidential administration is not the sort of relevant change that affects adjudication of title in a Quiet Title Act action. Our decision in Zinke drew this very distinction: "[T]he only issue in [Kane County is] whether the defendant federal government or the plaintiff county [holds] title to rights of way over federal land, and [SUWA does] not claim to have unique knowledge or experience that would assist the BLM in defense of its title." Id.
With respect to the second circumstance, we recognized in Kane County I that SUWA waived the argument that it might disagree with the United States about the length or width of Kane County's rights-of-way. 597 F.3d at 1135. Even if we accepted that argument, as the majority does, SUWA presents no sufficient reason to doubt the United States will continue to defend its title, apart from speculation about settlement negotiations between the parties that it would still be powerless to stop as an intervenor. The only issue on remand turns exclusively "on the historic use of these roads by the public for the period required under Utah law prior to 1976." Kane Cty. , No. 2:08-CV-315, 2009 WL 959804, at *3. And that is not an issue on which SUWA has "special expertise, experience, or knowledge" that "would not be available to the United States" in defending the scope of its title. Id. Nor does SUWA provide persuasive argument that the interests of the United States and SUWA, which are presumed to align, diverge on answering that historically bound question.
SUWA's speculation that the United States will be less than zealous to defend its title cannot explain (1) why the United States has not settled this case two years into the new presidential administration, *906 (2) why the parties did not request further stays to continue negotiation after the stay expired last year, or (3) why extensive discovery and depositions have continued in other pending road disputes between the parties. Nor can the majority opinion explain these present circumstances.
In my view, the district court did not abuse its discretion in concluding that SUWA's position was based on speculation and "unsupported by any evidence other than statements by the parties [in 2017] that settlement might be possible." Kane Cty. v. United States , No. 2:08-CV-315-CW, 2018 WL 3999575, at *3 (D. Utah Aug. 21, 2018).
* * * *
Because I believe SUWA lacks standing to intervene and because the district court did not abuse its discretion in denying SUWA's motion to intervene under Rule 24(a), I respectfully DISSENT.

Perhaps the tension in the majority opinion might dissipate if this were a case in which the government had to balance various private and public interests. But because a Quiet Title Act suit is not such a dispute, the situation here is unlike Pennsylvania v. President United States of America , 888 F.3d 52, 59 (3d Cir. 2018), or the other Administrative Procedure Act cases cited by the majority. This is explained in greater detail in Section B.2. In fact, the present suit resembles the case President distinguished, in which the proposed intervenor "share[d] the same objective as the United States" and "[a]ny differences" were "merely differences in strategy." United States v. Territory of the Virgin Islands , 748 F.3d 514, 522 (3d Cir. 2014).

In Wilderness Society , SUWA relied on an implied cause of action under the Supremacy Clause of the Constitution-a cause of action which is no longer recognized, see Armstrong v. Exceptional Child Ctr., Inc. , --- U.S. ----, 135 S. Ct. 1378, 1383-84, 191 L.Ed.2d 471 (2015), but which at the time could be asserted by anyone. This is unlike a cause of action under the Quiet Title Act, which may be raised only by a party asserting title or interest in federally claimed land.

Third-party standing has been traditionally considered as falling within the realm of "prudential standing." See Elk Grove Unified Sch. Dist. v. Newdow , 542 U.S. 1, 12, 124 S.Ct. 2301, 159 L.Ed.2d 98 (2004). But Lexmark casts doubt on this categorization and suggests the notion of "prudential standing" is in "tension" with the "virtually unflagging" duty of federal courts to "hear and decide cases within its jurisdiction," id. at 126, 134 S. Ct. 1377, 1386 (internal quotation marks omitted). It may be that the third-party standing rule, with its close connection to a party's right of action on a claim, should be considered as an aspect of Article III standing or as a merits ruling concerning the scope of the substantive right asserted.

Six judges disagreed. They explained in two separate concurrences that there "can be no logical or causal connection between the interest in land use asserted by SUWA and the dispute over land ownership in this case; a mere change in ownership will have no practical effect on the land's use, just as a change in the land's use would not affect the ownership" of the roads. San Juan Cty. , 503 F.3d at 1208 (Kelly, J., concurring in the judgment) (internal quotation marks omitted). In short, "it is hard to see how SUWA ... can be considered a party to the question of what real property the United States owns, or whether the United States granted an easement to [the County] decades ago." Id. at 1210 (McConnell, J., concurring in the judgment).

By statute, national monuments and wilderness study areas are expressly "subject to valid existing rights." Pub. L. No. 94-579, § 701(h), 90 Stat. 2743, 2786; accord 43 U.S.C. § 1782(c) (providing the Secretary must manage wilderness study areas "subject ... to the continuation of existing ... uses").

Insofar as the administration's land-management policies have excluded parts of the relevant roads from the Grand Staircase-Escalante National Monument, those policies can be and have been challenged through the APA See, e.g. , City of Carmel-By-The-Sea v. U.S. Dep't of Transp. , 123 F.3d 1142, 1166 (9th Cir. 1997) (holding executive orders on land-use subject to judicial review under the APA); Complaint for Declaratory and Injunctive Relief, Grand Staircase Escalante Partners v. Trump, No. 17-2591 (D.D.C. Dec. 4, 2017), 2017 WL 6033875. Such policies cannot properly be challenged through intervention in a Quiet Title Act action because reversing the United States' decision to relinquish parts of the Monument is not a possible remedy.