# United States Court of Appeals
## For the Eighth Circuit

_____

No. 20-3034

_____

Certon Sofware, Inc.

*Plaintiff - Appellee*

Timothy Stockton

*Intervenor Plaintiff - Appellant*

v.

EaglePicher Technologies, LLC

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Western District of Missouri - Joplin

_____

Submitted: April 13, 2021
Filed: July 8, 2021

_____

Before GRUENDER, BENTON, and SHEPHERD, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Timothy Stockton intervened in a lawsuit brought by Certon Software, Inc. against EaglePicher Technologies, LLC, arguing that Certon had assigned to him the

rights that it was asserting against EaglePicher. The district court[1] granted EaglePicher's motion to dismiss Stockton's intervenor complaint for lack of standing. Stockton appeals, and we affirm.

## I.

Stockton was the sole shareholder of Certon until January 23, 2017, when Cyient, Inc. purchased all shares of Certon from Stockton pursuant to a Stock Purchase Agreement ("SPA"). Cyient also hired Stockton pursuant to a Seller Employment Agreement. The SPA, which is governed by Delaware law, included the following language pertaining to a dispute between Certon and EaglePicher:

> **Section 6.16  Disputed Receivable**. Upon Closing, [Certon] shall automatically, and without any further action by [Certon], assign to [Stockton] the right to collect and receive, for [Stockton's] own account, the amounts owed by EaglePicher to [Certon] for services provided by [Certon] to EaglePicher in connection with the EaglePicher MAR-9516 DO-178 Software Project, which amount is approximately $1,700,000, provided, that [Stockton] must utilize commercially reasonable practices in such collection efforts and shall in no event (i) cause any harm, including reputational harm, to [Certon] or (ii) detract or interfere with [Stockton's] duties pursuant to the Seller Employment Agreement.

On September 29, 2017, Stockton caused a lawsuit to be filed in Certon's name against EaglePicher, claiming more than $1.3 million in damages. EaglePicher filed a counterclaim against Certon for breach of contract, claiming $2.5 million in damages. EaglePicher alleged, among other things, that "Certon was unable to perform its contractual responsibilities," thereby "materially harming [EaglePicher]'s ability to satisfy the requirements of its third-party customer" and ultimately leading to the loss of this customer's business.

---

[1]The Honorable Brian C. Wimes, United States District Judge for the Western District of Missouri.

Cyient learned about the lawsuit for the first time in early 2019. In an email chain from early 2019, Cyient's legal counsel told Stockton that the lawsuit "should've been in your name and not the company's" because Certon "assigned the right to the receivables to you." Stockton replied, "I now understand the plaintiff in the case against [EaglePicher] should be changed from Certon Software, Inc. to Timothy Stockton immediately and that I do not have authority to act on behalf of Certon Software, Inc." He also communicated his "sincerest apologies for not communicating the filing of this suit with (all of) you." Cyient terminated Stockton's employment in April 2019 after "Cyient and Stockton were unable to agree on a resolution regarding the lawsuit" and "Cyient discovered . . . that Stockton had also not disclosed the existence of [EaglePicher's] counterclaim."

In July 2019, Stockton moved to substitute himself for Certon as the plaintiff in the lawsuit under Federal Rule of Civil Procedure 25(c) or, in the alternative, to intervene as of right under Federal Rule of Civil Procedure 24(a). In support of his motion, Stockton attached a few excerpts from the SPA, including section 6.16.

The district court denied Stockton's motion to substitute under Rule 25(c) because it doubted that the assignment under section 6.16 was in effect. However, noting that a court must resolve all doubts in favor of the would-be intervenor when deciding a motion to intervene as of right, *see South Dakota ex rel. Barnett v. U.S. Dep't of Interior*, 317 F.3d 783, 785 (8th Cir. 2003), the district court granted Stockton's motion to intervene under Rule 24(a). At the time, the parties did not raise and the district court did not address the question whether Stockton had standing.

Subsequently, EaglePicher moved to dismiss Stockton's intervenor complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction. EaglePicher pointed out that it was impossible for both Certon and Stockton to have standing because at most one of them had the right to litigate the case against EaglePicher. EaglePicher then argued that Stockton had failed to show by a preponderance of the evidence that the right was his. In opposition, Stockton

argued that the evidence he had attached to his motion to substitute or intervene was sufficient to carry his burden to establish standing. The district court granted EaglePicher's motion to dismiss, and Stockton appeals.

## II.

When reviewing a district court's conclusion that it lacks subject-matter jurisdiction, we review the district court's legal determinations *de novo* and its resolution of disputed factual issues for clear error. *ABF Freight Sys., Inc. v. Int'l Brotherhood of Teamsters*, 645 F.3d 954, 958 (8th Cir. 2011). Stockton concedes that, as the party invoking the court's jurisdiction, he had the burden of establishing standing by a preponderance of the evidence. *See Iowa League of Cities v. E.P.A.*, 711 F.3d 844, 870 (8th Cir. 2013) ("Parties seeking to litigate in federal court have the burden of establishing jurisdiction, including standing, by a preponderance of the evidence." (internal quotation marks omitted)).

EaglePicher makes two arguments in support of its position that Stockton's only piece of evidence—the excerpts from the SPA—failed to establish standing. First, EaglePicher argues that the district court could not rely on the excerpts because Stockton failed to authenticate them. Second, EaglePicher argues that even if the district court could rely on the excerpts, they failed to establish by a preponderance of the evidence that Stockton had standing.

The district court adopted EaglePicher's second argument as its basis for granting EaglePicher's motion to dismiss. It concluded that Stockton had standing only if the assignment was in effect, and it found that, even considering the excerpts, Stockton had failed to establish by a preponderance of the evidence that the assignment was in effect. We agree. Accordingly, we do not reach EaglePicher's argument that the district court could not rely on the excerpts because Stockton failed to authenticate them.

The district court correctly concluded that Stockton had standing only if the assignment was in effect. A plaintiff-intervenor must satisfy the same standing requirements as any other plaintiff. *North Dakota ex rel. Stenehjem v. United States*, 787 F.3d 918, 920 (8th Cir. 2015). Among these is the requirement that the plaintiff must have suffered "an invasion of a legally protected interest," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992), with the caveat that "the assignee of a claim has standing to assert the injury in fact suffered by the assignor," *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 773 (2000). Here, the complaint Stockton filed in Certon's name alleges injuries suffered by Certon rather than Stockton. Therefore, the district court did not err in concluding that Stockton had standing to litigate these injuries only if the assignment of Certon's claim against EaglePicher to Stockton was in effect.

The district court also correctly concluded that, even considering the excerpts from the SPA, Stockton failed to show by a preponderance of the evidence that the assignment was in effect. Under Delaware law, a contractual right is void upon the obtaining of a condition subsequent to the right. *See Cont'l Airlines Corp v. Am. Gen. Corp.*, 575 A.2d 1160, 1169 (Del. 1990). Here, section 6.16 of the SPA enumerates three conditions subsequent whose obtaining would void the assignment: (1) Stockton's failing to "utilize commercially reasonable practices" in his efforts to collect from EaglePicher; (2) Stockton's causing "any harm, including reputational harm," to Certon; and (3) Stockton's handling the lawsuit in a way that "detract[s from] or interfere[s] with [his] duties pursuant to the Seller Employment Agreement." *See* "Condition Subsequent," *Black's Law Dictionary* (11th ed. 2019) (explaining that the term "provided" typically introduces a condition subsequent). For the reasons explained below, not only one but all of these conditions obtained.

First, Stockton failed to "utilize commercially reasonable practices" in his efforts to collect from EaglePicher. The email chain indicates that, when Stockton filed the lawsuit, EaglePicher's purchase of Certon had closed and the assignment was in effect. Thus, Stockton had no authority to file suit on behalf of Certon, and Certon had no rights to assert against EaglePicher anyway. *See Sprint Commc'ns*

*Co. v. APCC Servs., Inc.*, 554 U.S. 269, 285 (2008) (indicating that assignees "alone" have "legal title" to bring assigned claims). Consequently, filing and prosecuting the lawsuit in Certon's name was not a commercially reasonable means of collecting from EaglePicher. *Cf. Hicklin v. Onyx Acceptance Corp.*, 970 A.2d 244, 249-50 (Del. 2009) (interpreting the undefined term "commercially reasonable" in the Uniform Commercial Code to require conformity with norms "among reputable and responsible business and commercial enterprises").

Second, Stockton caused harm to Certon in his efforts to collect from EaglePicher. The complaint Stockton caused to be filed in Certon's name prompted a $2.5 million counterclaim from EaglePicher alleging that Certon's failure to deliver on its contractual obligations caused EaglePicher to lose business. This claim resulted in "harm, including reputational harm," to Certon.

Third, it appears that Stockton handled the lawsuit in a way that "detract[ed] from] or interfere[d] with [his] duties pursuant to the Seller Employment Agreement." Although the Seller Employment Agreement is not in the record, Cyient terminated Stockton's employment because he "not only . . . had filed the lawsuit in [Certon's] name without authorization and without notifying Cyient of the same, but . . . had also not disclosed the existence of [EaglePicher]'s counterclaim."

For all three reasons, even considering the excerpts from the SPA, it is at least as likely as not that the circumstances required for the assignment to be in effect were not present by the time Stockton sought to intervene. Therefore, the district court correctly concluded that Stockton failed to show by a preponderance of the evidence that the assignment was in effect.

## III.

Accordingly, we affirm the district court's dismissal of Stockton's intervenor complaint.

_____